## REYBURN, ADM'R., &c. vs. BELOTTI & GUGERI.

A witness may acquire such knowledge of a person's hand writing as to authorize him to testify to his signature, by having seen his letters on business with a firm of which witness was clerk, and finding that he acted upon and recognised the letters.

Scott, J., dissenting.

### ERROR to St. Louis Circuit Court.

Townsend, *for Plaintiff in error, insists :*

1st. The court erred in overruling the demurrer to the replications.

2nd. The evidence of Fontana's hand writing, was incompetent.

3rd. It was insufficient to entitle the bill of exchange to be read to the jury.

4th. The second instruction to the jury, asked by the defendant, ought to have been given.

5th. There was no evidence before the jury, from which they could legally find the issues joined upon the two replications to the second plea, and the issue joined upon the replication to the fifth plea, for the plaintiffs.

Shepley, *for Defendant in error, insists :*

1st. The decision of the Circuit Court was correct, in overruling the demurrer to the plaintiffs' replications.

2nd. It is maintained that the court below, was correct in admitting Fontana's acceptance to be read in evidence.

3rd. The court below was correct in refusing the instruction prayed for by the defendant.

McBride, J., *delivered the opinion of the Court.*

Belotti and Gugeri brought an action of assumpsit against Reyburn, adm'r. of Felix Fontana, dec'd., in the Circuit Court of St. Louis county. The declaration contained three counts; the first upon a bill of exchange drawn by the plaintiffs on the defendants intestate, dated at Falmouth, Oct. 16, 1824, payable six months after date, and accepted by him; the second count was for work and labor, &c., done and performed, goods, wares and merchandise sold, for money paid, laid out and expended, and lent and advanced to him; the third count was upon an account stated.

The defendant below, pleaded *non-assumpsit* to the whole declaration. 2nd. plea to the first count *non-assumpsit* within ten years. To the second count, 1st, as to the goods, wares and merchandise, *non-assumpsit* within two years, and as to the remainder of the count for work, &c.,

*non-assumpsit* within five years. To the third count, 1st. *non-assump-sit* within five years, and that the demands were not exhibited against the administrator for allowance within three years next after granting of letters of administration.

The plaintiff filed a similiter to the general plea of *non-assumpsit* and replied to the second plea, alleging "absence from the United States," and "beyond seas," as an excuse for not bringing his action within ten years after the same accrued. To the pleas to the second count, the plaintiff replied, 1. That their cause of action accrued prior to the passage of the act of the General Assembly of this State, prescribing the time of commencing actions, approved 16th March, 1835, and that the plaintiffs were at the time, and have continued up to the time of commencing this suit beyond seas, to wit: at London, &c. 2. The demand accrued prior to the passage of the before recited act, and that the plaintiff was absent from the United States, &c. The replications to the pleas to the third count, were similar to the two last to the second count; and a further replication, that a the time of the granting of the letters of administration, and ever since, the plaintiffs were absent from the United States, &c.

The defendant rejoined; when the cause was submitted to the jury, who found for the plaintiffs upon all of the issues, and assessed their damages. The defendat then filed his motion to set aside the verdict and for a new trial, for the reason that the verdict was against law, against evidence, against the weight of evidence and against law and evidence; because the court admitted illegal evidence, misdirected the jury and refused legal instructions asked for by the defendant. The motion was overruled and exceptions taken.

The bill of exceptions sets out the evidence given upon the trial. The deposition of *Charles William Gwyn,* a witness for the plaintiffs, which was taken on the 2nd Sept., 1844, when the deponent was between thirty-one and thirty-two years of age, who states that he had been in the employment of the plaintiffs, who resided in the City of London, and who are barometter and looking-glass manufacturers, from the age of twelve years, and during the time of such employment, he had been well acquainted with the affairs of the firm of Belotti and Gugeri; that the firm was changed in the year 1839, and Charles, the brother of John Belotti, became a partner in said firm, the said John having retired therefrom; that the new firm continued until 1842, when it was succeeded by Andrew Gugeri and Padlo Carughi, who became partners and did business under the firm of Gugeri & Carughi; that he had been clerk under all the partnerships, and was well acquainted with the business of the

house during the changes of the partnerships; that from the 25th March, 1823, to 15th Nov., 1824, goods were sold by the plaintiffs to Fontana to a large amount, and on the 16th April, 1825, the sum of £485-13-10-1, remained due and unpaid, and had never been paid, &c. That the draft for thirty pounds, dated 16th Oct., 1824, was given in part payment of the account, and he knows that the signature of the acceptance thereon, is in the hand writing of the said Felix Fontana, and that he has become acquainted with his hand writing, from having seen it in his letters between the years 1823 and 1825; that said bill of exchange was duly presented, &c., but had not been paid, &c.; that Fontana absconded from England early in the year 1825, and had not been heard from until recently.

Upon this proof of the hand writing, the plaintiffs offered to read the bill of exchange, to which the defendant objected; but the objection was overruled and the bill was read to the jury.

The defendant proved that in the year 1832, Fontana was in Nashville, Tenn., and came to this State about the 20th Feb., 1839, and died about the 1st March following; that he did business openly after his arrival in this State, and up to his death, &c.

The defendant then moved the court to instruct the jury as follows:

1. "The burden of proving affirmatively all of the issues joined between the said parties, lies upon the plaintiffs and the jury will find for the defendant such of the said issues, if any, as the plaintiffs have failed to prove."

2. "That the right of action of said plaintiffs against said Fontana, accrued *in this State,* when said Fontana first came into this State, and therefore unless the jury believe from the evidence, that said Fontana first *came into this State,* prior to the passage of the act of the General Assembly of the State of Missouri, mentioned in the four replications to the first and second amended pleas, they will find the issues joined upon the said four replications for the defendant."

The court gave the first, but refused to give the 2nd instruction; to which refusal the defendant excepted.

The only questions presented on the record and necessary to be decided by this Court are, first, was the hand writing of Fontana, on the bill of exchange, sufficiently proved to permit the bill of exchange to be read as evidence to the jury? And second, did the court err in refusing to give the second instruction to the jury?

1. There are different modes of acquiring a knowledge of the handwriting of another, to enable a witness to testify to its genuineness.—

One means of information, is from having seen letters or writings, purporting to be the hand writing of the party, and having afterwards personally communicated with him respecting them, or acted upon them as his, the party having known and acquiesced in such acts, founded upon their supposed genuineness; or by such adoption of them into the ordinary business transactions of life, as induces a reasonable presumption of their being his own writings. 1 Green. Ev., § 577. It is not indispensable to call the individual to whom the letters were addressed, for the purpose of proving the hand writing, as any one through whose hands the letters have passed, is equally competent, such as clerks, &c. 3 Stark Ev., note 914, p. 1324.

Applying the foregoing rule to the evidence of Gwyn, the witness, who was clerk in the house of Belotti & Gugeri, at the time Fontana contracted the debt in question, and it was sufficient to authorize the reading of the bill of exchange, as evidence to the jury. The witness is not full and clear in his statement of the particular mode by which he obtained a knowledge of the hand writing of Fontana, so as to be able to swear to it; the omission does not however, effect the competency of his evidence. If the statement or the witness was not satisfactory to the defendant, it was his right to have required him, on cross examination, to explain more fully the means of his information. The case of *Moody vs. Ronell*, 17 Pick., 494, presented a question very similar to the one under consideration, and the court in that case sustained the view which we here take; the court however remark, that the case might present a different question, if the witness were under a *viva voce* examination, because where the omission was suggested, if the party calling him should decline asking him the direct question, as to his means of knowledge, it might create some suspicion, but this inference does not arise, where the witness is not present.

But it is contended that the witness was too young, at the time he professes to have acquired a knowledge of Fontana's hand writing, to have done so, and therefore, the bill of exchange, on his evidence alone, should not have gone before the jury. If the facts disclosed by the witness show that he could not reasonably have obtained a knowledge of Fontana's hand writing at the time stated, still, the court would not have been warranted in withholding the evidence from the jury; and how far his statements were within the range of probability, and entitled to credence, was a question properly left to the decision of the jury. We therefore see no error on this point.

2. The question presented by the second instruction, and which the

Circuit Court refused to give to the jury, comes fully within the range of the decision made by this Court, in the case of *King vs. Lane*, 7 Mo. R., 241, and affirmed in the case of *Shreve vs. Whittelsey*, ib., 473.

Where a party demurs, and his demurrer is overruled, and he withdraws the demurrer and pleads, he thereby waives the question of law raised by his demurrer, and cannot raise the question in this Court.— This we understand, from the record, was the course pursued by the defendant on his demurrer to the plaintiffs' replications. If he had confidence in the question of law raised by his demurrer, he should have let judgment been entered thereon, and not have withdrawn his demurrer and rejoined.

For the foregoing reasons the judgment should be affirmed, and Judge NAPTON concurring herein, the same is affirmed.

SCOTT, J., *dissenting.*

The deposition of Gwyn does not state that he ever saw Fontana write; his knowledge of his hand writing was only derived from seeing it; and this has always been held insufficient to enable a witness to prove the hand writing of another. The judgment ought, in my opinion, to be reversed from this cause.