W. P. MARTIN v. JOHN G. CHASTEEN.

The Clerk of the Supreme Court is not bound to render his services gratuitously to a party, whom the Judge of the Court below has allowed to appeal without giving the bond required by law.

(*Superior Court Clerk's Office* v. *Lockman,* 1 Dev. 146; *Biggerstaff* v. *Cox,* 1 Jones, 534, cited and approved.)

This was a MOTION to the Court, in the cause heretofore dismissed at the instance of the appellee for want of an appeal bond.

The facts pertinent to the point decided are fully set out in the opinion of Justice RODMAN.

*Ferguson,* for appellant.
*Smith & Strong,* contra.

RODMAN, J.  At Spring Term, 1875, of the Superior Court of Cherokee, the plaintiff recovered judgment against the defendant, who thereupon appealed to this Court without giving any bond or undertaking to the appellee, as required by C. C. P., sec. 303, &c.  This he was allowed to do by the Judge on his making affidavit that by reason of poverty he was unable to give security, under the Act of 1873–'74, chap. 60.

It may be remarked in passing, that the appellant does not appear to have conformed to the Act by accompanying his affidavit with a written statement from a practicing attorney of the Court, that he had examined the appellant's case and was of opinion that the judgment of the Superior Court was contrary to law.

The transcript was received by the Clerk of this Court before the calling of the twelfth district at June Term, 1875, and he omitted to enter it on the docket for the reason that his fee for that service was not paid.  After the cases docketed from the district had been called and disposed of, the appellee, in conformity with the practice of the Court, caused the Clerk to docket the case by paying him his fee, and moved to dismiss the appeal for want of prosecution, which motion was allowed and the appeal dismissed.  The appellant moves at the present term of the Court to vacate the judgment dismissing the appeal, and that the case be docketed and heard on the record of appeal.

His counsel contends that under the Act of 1873–'74, above referred to, he was allowed, on complying with its provisions, to appeal *as a pauper,* and that the officers of the

appellate Court were bound to render him their services gratuitously, and that he could neither be adjudged to pay or to recover costs.

We do not think this was the intention of the Act. Every Act which is claimed to be derogatory to common right must be strictly construed. And, certainly, to require one man to serve another gratuitously, and to compel one who has recovered a judgment in a Superior Court, and who *prima facie* must be presumed to have a just claim, to undergo expense and fees in maintaining his judgment in an .appellate Court, without the possibility of indemnity, must be conceded to be derogatory to common right. Several recent statutes, including the one in question, seem to indi- -cate.that mistaken opinions are current on this subject.

The law was never so false to justice and humanity as to ·deny a man access to the Courts by reason of his poverty. If he could find any counsel who would certify that in his ·opinion he had a just claim, a Judge would thereupon order .that all necessary process be issued and other services be performed for him by all the officers of the Court gra- ·tuitously.

Among the officers to whose gratuitous labors he thus ·became entitled were the attornies of the Court, one of whom ·would be assigned to him The services of counsel were :always in England so far regarded as gratuitous that no .action could be maintained upon them. In early times what are called contingent fees, by which the attorney or counsel shares in the recovery, were not only considered improper, but criminal as champerty. When a learned and impartial Judge had decided that a pauper party had no just claim or defence, the decision was presumed to be right and he could not appeal except on the ordinary terms. Under this state of the law, while the demands of justice .and humanity were met, there was no invitation to specu-

lative litigation, or to that intended to wrong an adversary or to extort from him an unjust demand. The injustice and impolicy of some of the recent legislation on this subject will probably be conceded by all whose experience enables them to form an opinion. While it is a duty which we shall always cheerfully perform to give effect to the declared will of the Legislature, yet we do not feel bound to impute to the Legislature an intent to extend the right to sue as a pauper beyond the fair meaning of its words. The Act in question only enacts that on a party complying with its provisions it shall be the duty of the Judge " to make an order allowing said party to appeal from said judgment to the Supreme Court, *as in other cases of appeal* now allowed by law, *without giving security therefor*." Now as is well known, the object of an undertaking by an appellant is not to secure the fees which the appellant may become liable for to the officers of the Court, pending his appeal, but only to secure reimbursement to the appellee of such fees as he may have to pay. The Act puts an appellant who has complied with its conditions, in the condition he would have been in if he had given an undertaking. Now an appellant who has given an undertaking is not entitled to the gratuituous services of the officers of the Court, but must pay for them as he procures them if the officers demand it. *Superior Court Office* v. *Lockman*, 1 Dev., 146.

In *Biggerstaff* v. *Cox*, 1 Jones, 534, it was held, that an order of Court authorizing a plaintiff to prosecute his suit *without further security*, did not authorize him to prosecute it thereafter as a pauper, but that both he and the security he had before given continued liable for the subsequent costs. This case seems very nearly in point.

We think the Clerk of this Court had a right to demand payment of his fee for docketing the appeal before he performed the service, and he was not compelled to perform it gratuitously.

MARTIN *v.* CHASTEEN.

The practice adopted by this Court, and expressed in a rule, which will be printed in this volume, is neither novel or unreasonable. It is substantially that of this Court before 1868. Rev. Code, chap. —. It is almost identical with that of the Supreme Court of the United States. *Every* Court, of whatever grade, must, *of necessity*, require suitors in it to prosecute their suits in *due* time, which it is for the Court to determine on principles of justice and convenience. It would be obviously unjust to keep one against whom a demand is made, (and that is the position of an appellee or defendant in error,) attending Court indefinitely to await a demand which is not made, and which it would often be for the interest of the appellant never to make. The law cannot permit the enforcement of presumably a just demand to be thus procrastinated. Every unwilling debtor would resort to it, and the Court would be a mockery.

If the Clerk had docketed the judgment, it would still have been necessary for the appellant to have attended personally or by attorney to prosecute his suit. He has had all that the Act intended to give him, the opportunity of prosecuting his appeal without securing his adversary from costs, and if he has not had a hearing on the merits, it has been from his own want of diligence in prosecuting his right.

PER CURIAM.                Motion refused.