R. F. ARMFIELD and C. H. ARMFIELD, Ex'rs, v. WILLIAM F. COLVERT et al.

*Evidence—The Code,* § 590—*Apt Time—Trial before Referee.*

1. The executors of a deceased member of a firm sued the surviving partners for an account and settlement of the copartnership business. One of the defendants was allowed to testify that plaintiff's testator agreed with witness and the other partners upon a certain basis (which witness stated at length) for the adjustment of the affairs of the firm between the members thereof; and assented to a statement of each partner's interest in the firm, which appeared on the books of the firm: *Held,* that such testimony should have been ruled out upon plaintiffs' objection, as it was incompetent under § 590, *The Code.* But the witness had a right to testify that the books alluded to were kept among the papers of the firm, that decedent had access to them, and that many of the entries were in his handwriting.

2. In the above case, the plaintiffs introduced one of the defendants as a witness, who stated, without objection on the part of the defendants, that plaintiffs' testator contributed a certain sum towards the copartnership capital: *Held,* that plaintiffs did not thereby open the door so as to permit defendants to testify as to other transactions between them and plaintiffs' testator.

3. Upon a trial before a referee, one of the parties objected to certain testimony as it was given in, but the referee did not then make a note of such objections, but at the end of the written evidence as taken down by him, he noted that the evidence in question had been objected to "in apt time": *Held,* that this was a sufficient noting of the objection, and from it the Court would assume that the objections were made as the evidence was offered.

CIVIL ACTION, tried before *Clark, J.,* at November Term, 1887, of IREDELL Superior Court.

There was judgment overruling plaintiffs' exceptions to the report of a referee and confirming the report, whereupon, the plaintiffs appealed.

The plaintiffs brought the action for the settlement of the partnership affairs of the firm of Gaither & Colvert,

composed of the testator of plaintiffs, A. F. Gaither, and the defendants Wm. I. Colvert, John G. Colvert, J. C. Stimpson, W. G. Bennett and W. C. Nicholson.

This partnership was formed in the year 1876, and the partners continued to carry on the business of buying and selling leaf tobacco, and of manufacturing plug and smoking tobacco, till about the year 1880.

A. F. Gaither, testator of the plaintiffs, died in 1883, leaving a last will and testament, in which plaintiffs were appointed his executors, and they have duly qualified as such. W. G. Bennett had died before the hearing, and a *nol. pros.* was entered as to him by the plaintiffs. The cause was referred, and on the coming in of the report of the referee, a number of exceptions were filed by the plaintiffs, but all were overruled by the Court below, and a judgment was rendered, confirming the report of the referee.

The first witness offered for the plaintiffs before the referee was W. G. Nicholson, one of the defendants, who testified that he himself put $1,065 into the business, A. F. Gaither about $2,000, W. I. Colvert about $2,000, John G. Colvert about $1,000, J. E. Stimpson about $1,000, and W. G. Bennett about $1,000. He testified further as follows: "I think W. I. and J. G. Colvert kept the books of the firm most of the time. W. I. Colvert, J. G. Colvert and A. F. Gaither were the principal managers of the firm. W. I. Colvert paid out all the money that I ever saw paid. I think that J. G. Colvert paid out some money. A. F. Gaither had the privilege and access to the books of the firm, but, to my knowledge, had but very little to do with the books. I do not know who has the books at this time, nor do I know who had them at the dissolution of the firm. The firm had, at its dissolution, one hydraulic press, worth $250."

After giving a list of articles of property owned by the firm, and the value of each article, and stating that he did not know what credits the firm had, the witness was turned

ARMFIELD *v.* COLVERT.

over to defendants for cross-examination by W. I. Colvert and John G. Colvert, when, in answer to a question, he said:

"As to sums put in by the partners aforesaid, my knowl- edge was derived from a meeting that the partners had. Amos F. Gaither told me he put in $2 000." 

This was objected to by the Colverts and Stimpson as incompetent.

The witness continued: "No one was present at the time A. F. Gaither told me he had put in $2,000; I did not hear Gaither say, at the meeting above referred to, that he had put into the firm $2,000; I heard, at said meeting, J. G. Colvert say that A. F. Gaither had put in about $2,000; I also saw said amount stated in a book, being the same book in which my subscription was written." 

It is not material to give all of the testimony of this witness.

We find, among the exceptions filed by the plaintiffs, and relied on in the argument, the following, to-wit:

"11. That he erred in considering the evidence of William I. Colvert, John G. Colvert and J. E. Stimpson, concerning transactions and communications with A. F. Gaither, the testator of the plaintiffs, when the record of evidence shows that the same was objected to, and that the same was incompetent under § 590 of *The Code.*"

The testimony of John G. Colvert, so far as it relates to transactions or communications, seems to have been objected to, as the obnoxious portions of his testimony were elicited from him; but the referee entered the objection at the close of the testimony. The testimony of J. G. Colvert bearing upon this question is as follows, to-wit:

"The entries on pages 102 to 106 were not made four or five years after the old firm ceased to do business, except the last two lines on page 106, which were made in the latter part of 1876, from page 102 to 106 inclusive. All from 102 to 107 was a settlement of the old partnership, *and agreed to*

*by all the partners.* The agreement between the partners of the old firm was to take an aggregate of the debts and credits, and the difference between them was to be the ratio of their part in the new firm of the $13,547.40. A. F. Gaither was considered an ordinary business man by some, and good by some. It was the object of the partners of the old firm to make a just settlement in proportion to the difference of debits and credits, as shown on page 107."

" When the settlement was made between the old partners of the firm of A. F. Gaither, was it not done upon the basis of their respective interests in said firm? "

"It was, as shown on page 107, after deducting their debits—after their interests were prorated through the $13,547.40. I think there is no error making $263.57 the basis of A. F. Gaither's interest in the old firm. If there is a clerical error, I am willing to have it corrected. A. F. Gaither put into the old firm, at sundry times, $2,808.25. I did not consider the indebtedness of the partners to the old firm, but considered the difference of the debits and credits as assets of the new firm. The list made from pages 102 to 106 was made by Gaither and myself, we having been appointed, at the first meeting in 1876, as a committee to value the machinery and take a list of all notes and accounts of the old firm. All the members of the new firm were present at this meeting. Gaither and myself took the list in the middle of 1876, and after the said meeting. The reason why we did not take the list at once was, that there were teams out, and we had to get up the notes and money before we could take the list. We went to the factory and examined the machinery, and valued it, as the books show; notes were taken by Gaither, calling out the names of makers of the notes, and the amounts, and the witness wrote them down in book 'A.' This book, after the entries were made, was left in firm's office, in a safe in said office. A. F. Gaither had access to the office and safe. Most of the

entries on page 2 are in the handwriting of A. F. Gaither, and said page contains a portion of W. G. Nicholson's account. Some entries on page six were made by A. F. Gaither, and contains a portion of W. G. Nicholson's account: Cash paid $100, July 7, 1877; August 1, 1877, cash paid $200; by amount of account at Augustus Sharp's, August 11, 1877, $100. I see on page 6 the word *paid*, and it is spelled 'paide,' Gaither's usual way of spelling this word. The most of the entries on page 59 are in Gaither's handwriting; I find *paid* in several places on this page, and spelled 'paide,' which words were written by Gaither. Some entries on page 58 are in the handwriting of Gaither, containing, in part, W. G. Bennett's account. Gaither, W. I. Colvert and myself kept book 'A,' and made entries in it. On page 102 the item entered as cash on hand, $7,126.67, was the cash on hand at the formation of the new firm, together with what was collected before the list was made, on the old debts, and a small quantity of leaf tobacco, estimated as cash, at what it was bought at; also some smoking tobacco, which came from the old firm. The hydraulic press and shapes and retainers, sold in December, 1883, had been in use from and before the creation of the new firm, and up to the time that the firm ceased to do business, in 1880. G. W. Nicholson, J. E. Stimpson and myself were present at the sale of the machinery and other property; the sale was at public auction; Dr. Nicholson did not buy any of the articles sold ; he did not forbid the sale, and made no objection, so far as I heard. I think Gaither took the watch above referred to, for the debt, and I think the trade was done by writing; I think the debtor, from whom the said watch was purchased, lived in South Carolina."

Plaintiff and defendant Nicholson, in apt time, objected to all the foregoing evidence touching any matter with A. F. Gaither.

A. F. Gaither's book "A" is offered in evidence by defendants Colvert and Stimpson, to which the plaintiff and defendant Nicholson object.

Cross-examination of Dr. W. G. Nicholson resumed: "A. F. Gaither made some entries on page 2 of book 'A.' I say positively, that A. F. Gaither made no entries on page 6; Gaither made, on page 58, an entry of one line; I think that there is no other entry on said page in Gaither's handwriting; Gaither made one entry on page 59, 'Paid, May, June, $100.' I can't say there is any other entry by Gaither on said page; I was frequently about the office during the existence of the firm, and never inspected my own account, as kept there in the books of the firm. Did not have an opportunity to inspect the books; I never asked to inspect them, nor was I ever refused by any one to do so. I think it very doubtful whether I could have seen the books if I had asked."

It appeared, also, in evidence, that there was a firm doing business under the name of A. F. Gaither, prior to the year 1876, composed of A. F. Gaither, W. I. Colvert, J. G. Colvert and J. E. Sharpe, and the assets of the old firm were put into the new.

The adjustment of the debits and credits of each partner in the firm of Gaither & Colvert was made, therefore, to depend, in some measure, upon the amount of his share in the property and money of the old firm merged into the new.

It is not necessary to give the report of the referee in full. One of the conclusions of law is as follows:

" A. F. Gaither is indebted to the firm of Gaither & Colvert $1,529.38, money and goods taken out of said firm more than he put in, aside from the stock originally put in by him. Saved of said Gaither's original stock, which he will be entitled to retain, the sum of $213.45, which sum is to be deducted from the aforesaid sum of $1,529.38, leaving $1,315.93. I, therefore, direct that judgment be rendered

against the plaintiffs in this cause for the sum of thirteen hundred and fifteen dollars and ninety-three cents in favor of the firm of Gaither & Colvert."

On the top of page 102 of the book "A" is the following entry:

"Below is a list of cash, amount of tobacco, machinery and value, amount of due bills, notes, and other articles and value, &c., belonging to A. F. Gaither, J. G. Colvert and J. E. Stimpson (the old tobacco firm), when W. G. Nicholson and W. G. Bennett came into the firm in the spring of 1876."

Then follows, on page 102 to 106, an inventory of the cash, property and value, and the solvent credits of the old firm put into the new. The entries begin:

```
Cash on hand_____$7,126 67
Memson, Gaither & Co._____   390 66
Hydraulic press and retainers_____   475 00
Two sets of shapers_____   210 00
Pair of bank scales_____    20 00
```

```
The aggregate value of all of the assets of
    the old firm reached, on page 106, is____$15,863 27
Deducting all notes uncollected_____  2,315 87
```

```
The result stated at the old firm worth, spring
    of 1876_____$13,547 40
```

On page 107 are the following entries:

A. F. GAITHER.

```
                                        Dr.        Cr.
Amts. Dr. and Cr., old firm, spring 1876,  $2,544.68  $2,808.25
                                                      2,544.68

                                              $   263.57
```

JOHN G. COLVERT.

|  | Dr. | Cr. |
|---|---|---|
| Amts. Dr. and Cr., old firm, spring 1876, | $495.15 | $1,738.25 |
|  |  | 495.15 |
|  |  | $1,243.10 |

WM. I. COLVERT.

|  | Dr. | Cr. |
|---|---|---|
| Amts. Dr. and Cr., old firm, spring 1876, | $1,599.81 | $4,072.41 |
|  |  | 1,591.81 |
|  |  | $2,480.60 |

JOHN E. STIMPSON.

|  | Dr. | Cr. |
|---|---|---|
| Amts. Dr. and Cr., old firm, spring 1876, | $936.10 | $2,022.49 |
|  |  | 936.10 |
|  |  | $1,086.39 |

*Mr. D. M. Furches*, for the plaintiffs.
*Mr. W. M. Robbins*, for the defendants.

AVERY, J. (after stating the case). We do not deem it necessary to set forth the whole of the referee's report. We think the objection, that the testimony of the witness Colvert was not competent, under § 590 of *The Code*, should have been sustained by the referee, and the eleventh exception of the plaintiffs ought not to have been subsequently overruled by the Judge. At the end of the statement of the testimony of J. G. Colvert we find the following:

"Plaintiffs and defendant Nicholson, *in apt time, objected to all of the foregoing evidence touching any matter with A. F. Gaither.*"

It is true, that this Court has held that objections to testimony, incompetent by reason of the provisions of section

590, will not be entertained, unless they are taken in due time. If so taken they will be sustained. *Meroney* v. *Avery*, 64 N. C., 312.

.The referee having .found that the objection was taken in apt time, we must consider the plaintiffs' exception as having been entered, repeatedly, at the different times when Colvert testified :

"1. All of book 'A,' from pages 102 to 107, was a settlement of the old partnership, and *agreed to by all of the partners.* The agreement between the partners of the old firm was to take an aggregate of the debts and credits, and the difference between them was to be the ratio of their part, in the new firm, of the $13,547.40.

"2. The list made from pages 102 to 106 was made by Gaither and myself, we having been appointed at the first meeting in 1876 as *a committee to value the machinery,* and take a list of all notes and accounts of the old firm. Gaither and myself took the list.

"3. We (Gaither and witness) went to the factory and examined the machinery, and valued it, as the book shows. Notes were taken by Gaither, calling out the names of makers, and witness took them down in book 'A.'"

We can find other statements in the testimony of John G. Colvert that are amenable to the objection of incompetency as transactions or communications with A. F. Gaither; and objection was also made to the testimony of W. I. Colvert in the same way, some portions of his testimony being erroneously admitted; but, as there was clearly error in permitting John G. Colvert to testify that his deceased partner entered into an agreement with the witness and the other partners, that the basis of merging the business of the old firm into the new should be that the stock of members of the old firm, in that of Gaither & Colvert, should be the difference between their debits and credits with the former, and that, in pursuance of that plan of adjustment, Gaither aided him

in determining the value of partnership property, and in making the settlement recorded from page 102 to 106, book "A," and assented to the statement of the result as to each partner, on page 107 (which appears in the statement of the case). The defendant clearly had the right to testify, that book "A" was kept among the papers of Gaither & Colvert, that Gaither had access to it, and that, in fact, many of the entries in the book were in his handwriting. *Leggett* v. *Glover*, 71 N. C., 211.

But the referee was acting both as judge and jury in the trial of this case, and the appellate Court cannot determine how much weight he attached, in passing upon the facts, to the evidence of Colvert, that his deceased partner directly assented to a settlement, and aided him in recording it, when that settlement furnishes, in part, the data from which the referee reached a conclusion as to the amount due each partner at the time of the dissolution. The evidence allowed and acted upon by the referee embraced both a transaction and a communication with the deceased, when the plaintiff had brought suit for a settlement against all of the partners of their testator, and thereby placed all of them in the attitude of adversaries. This case is, therefore, distinguishable from *Peacock* v. *Stott*, 90 N. C., 518. The plaintiff in that case had brought his action against three partners, one of whom was dead, and was allowed to testify as to a transaction with the three partners, because two of them were living and could contradict him if they would not admit the truth of his statements. This testimony was held admissible because it was not within the mischief intended to be prevented by § 590 of *The Code*, viz.: "That unless both parties to the transaction can be heard on oath, a party to an action is not a competent witness." *McCanless* v. *Reynolds*, 74 N. C., 301.

The fact that plaintiffs were compelled, it may be, to select one of the defendants, W. G. Nicholson, and examine him,

as their first witness before the referee, does not affect the competency of Colvert's evidence, nor did the fact that Nicholson, one of the defendants, testified, without objection, that he heard Gaither say he had put about $2,000 into the new firm, remove the restrictions of the law, so as to make admissible evidence of Colvert, otherwise amenable to objection.

When Nicholson testified to that declaration of Gaither, the testimony of Gaither was not given in evidence, and if it had been, it did not relate to the same transaction or communication. It was not connected with the adjustment of the affairs of the old firm, the valuation of its property and the basis upon which the property was turned over to Gaither and Colvert.

But it has been held by this Court that, where there was an issue as to the existence of a partnership between a witness and the intestate of the adversary party to the action, the witness would not be allowed, after objection, to testify that such a partnership existed, without first negativing the natural supposition, that his knowledge of the existence of such a partnership was derived from a transaction or communication with the intestate. *Sikes* v. *Parker*, 95 N. C., 232.

But it has been suggested, that the plaintiffs lost the advantage of their objection to the testimony, though it was taken in apt time, as the referee reports (and we must construe apt time to mean the very earliest moment that such objection could have been made), because the referee entered the objection at the close of the testimony of the witness, instead of attaching it to the utterances of the witness, to which it was in fact directed, as incompetent. It is evident that the referee intended, desired and expected that, in fairness and good faith to the plaintiffs' counsel, the objection should be treated as specifically directed to any portions of evidence of the witness coming within the restrictions of said section. If it were not so the referee would have

omitted the words "in apt time." We cannot consent, therefore, to deprive a party of a meritorious objection, made at the proper time, and place him on a level with one who studiously waits till a witness has delivered all of his testimony, some parts of which are competent, and other portions are not, and then excepts to the whole.

This Court has refused to consider such exception, on the express ground that the Judge, if asked in apt time, might have excluded testimony specifically pointed out as incompetent, and, if search could be made for a single objectionable sentence in a mass of testimony, when silence at the moment could be construed into a waiver of objection. The "rule of practice which requires that the obnoxious evidence should be pointed out and brought to the notice of the Court, in order to a direct ruling on its reception," is just and salutary, and is established by authority. *Hammond* v. *Schiff*, 100 N. C., 161; *Barnhardt* v. *Smith*, 86 N. C., 473.

But in the case before us, the referee says that the obnoxious testimony was pointed out, and he had an opportunity of excluding it, and leaving of the "mass of testimony" only such as was competent. Obviously, the reason of the rule, adopted in the cases last cited, does not exist, and the rigorous rule itself should be held inapplicable. To hold otherwise would be to stick in the bark, and thereby do manifest injustice.

There was error in overruling the eleventh exception of the plaintiff, and the judgment is reversed. The cause will be re-referred to the referee. We have deemed it unnecessary to discuss the other exceptions. It may not be improper to call the attention of the parties to the case of *Holden* v. *Peace*, 4 Ired. Eq., 223, as bearing, possibly, upon another question that was the subject of discussion and exception.

Error.                                                  Reversed.