### DOLAN v. LEARY et al.

(Supreme Court, Special Term, Kings County. January, 1901.)

1. EQUITY—INCOMPETENT EVIDENCE—APPEAL.

The admission of incompetent evidence in an equity suit is not reversible error, since the whole case is considered on appeal from an equity judgment.

2. SAME—TRANSACTIONS WITH DECEDENT—COMPETENCY OF WITNESSES.

Where a husband after his wife's death claimed title to her real estate by virtue of a deed made to her brother, and a deed by him reconveying the property to the husband and wife as joint tenants, which deeds were said to be lost, the husband's testimony that he saw the execution and acknowledgment of the deeds was incompetent, it being a declaration concerning a personal transaction between him and his deceased wife.

3. SAME—SIGNATURE TO DEED.

Testimony of a husband as to the genuineness of his deceased wife's signature to a lost deed, under which he claimed title, was not incompetent, as a statement concerning a personal transaction between him and his wife.

Action by Hugh F. Dolan against Jeremiah Leary and others to establish title to land. Judgment for defendants.

William S. Maddox, for plaintiff.

George G. Reynolds and Herman H. Baker, for defendants.

GAYNOR, J. By the death of the plaintiff's wife intestate on February 3, 1900, title to the real estate in question has apparently become vested in her father, the defendant Jeremiah Leary, he being her sole heir at law. But the complaint is that on May 2, 1891, the said wife conveyed the said real estate to her brother Jeremiah, whereupon he conveyed the same to her and her husband (the plaintiff) as joint tenants; but that since her death the said deeds of conveyance cannot be found.

The plaintiff, who is an attorney at law, testifies that he drew the said deeds; and that he kept them in a closet in the house with his papers and valuables from their said date up to the time of his wife's death, but that shortly after her death they were missing, and that they cannot be found. They were never recorded. He and his wife, and her father and mother, and several children of the latter, lived together in the same house.

The plaintiff was the only witness on his side on the principal question. He was permitted to testify, against the objection of the defendants that such evidence was incompetent as "concerning" a personal transaction or communication between the witness and his deceased wife, through whom he claims title, that he was present before the notary who took the acknowledgments, and saw his wife execute and acknowledge the deed by her to her brother Jeremiah, and at the same time saw the latter and his wife execute and acknowledge the deed by them to the plaintiff and his wife. He also testified under like objection that he was acquainted with his wife's handwriting, and that the signature to the said deed was hers.

The said evidence was taken, as has always been and is now the course in equity, subject to consideration as to its competency or probativeness. The admission of incompetent evidence in a suit in equity never was and is not now ground in itself for the reversal of the judgment. On the other hand it is always dangerous to exclude evidence in an equity suit, because if it be found on appeal that such evidence is necessary to a final decision, the case has to be sent back to have the same taken. Technical errors in the admission of evidence in equity suits do not count on appeal. In fact the rules of evidence of the common-law courts were never adopted by and never existed in chancery. And an appeal from an equity judgment never was and is not now on a bill of exceptions, as in common-law actions, but on the whole case; and the appeal always was and is now in effect a new trial before several chancellors instead of one; and the inquiry on appeal is not whether there is some technical error to upset the judgment on, but whether without regard to technical errors justice has been done; and if the decision of the chancellor or equity judge is sufficiently supported by competent and probative evidence, and justice has therefore been done, the judgment will not be disturbed merely because some evidence was taken which is not competent or probative. De St. Laurent v. Slater, 23 App. Div. 70, 48 N. Y. Supp. 1103; Post v. Mason, 91 N. Y. 539. It would be the climax of absurdity to send the case back to the chancellor or equity judge so that he could wet his finger on his tongue and rub such evidence out and then send the case up again. The appellate judges can disregard such testimony without all that fuss and expense; they can rub it out themselves. To be sure some "modern" decision may be cited in which equity judgments have been reversed on mere technical errors in the admission of evidence, without regard to whether the judgment was nevertheless correct on the legal and probative evidence. But what difference can they make to educated and scientific lawyers? They were inadvertent. The decisions of that class are generally by courts not of final authority; but there are exceptions, as in Carroll v. Deimel, 95 N. Y. 252, where the opinion seems to be quite contrary to the decision in Post v. Mason, supra, and the settled rule and practice in equity. And the reporter's headnote goes beyond the opinion, and is unauthorized. The rule always was (unquestioned and undoubted) that on appeal in equity cases the judgment was never reversed for the admission or exclusion of evidence, or for any technical error, if it was found to

be adequately supported by competent and probative evidence, and. that justice had therefore been done. And where the chancellor sent a question of fact out of equity to be submitted to a jury in a common-law court, and then resumed the consideration of the case upon. the verdict and the evidence on which it was founded being reported back to him, the same rule still prevailed in respect of any such errors by the judge who presided with the jury; for the chancellor was not obliged to accept the verdict, but might disregard it, and go his own way. It was, as it is now, only advisory. But some question in regard to such errors before a jury having arisen in this state, it was put at rest by the provision in section 1003 of our Code of Civil Procedure, that even in such case "an error in the admission or ex-clusion of evidence, or in any other ruling or direction of the judge upon the trial, may, in the discretion of the court which reviews it, be disregarded, if that court is of opinion that substantial justice does not require that a new trial should be granted." Only a lawyer so narrow and unscientific that he is never content unless he can find a precise letter of statute for everything, could suggest that although the rule prevails in an equity suit in which a question of fact is submitted to a jury for its advice, it does not exist where the chancellor or equity judge tries the case without resorting to such advice.

Although, therefore, it does not seem necessary that I should state how I have regarded the said evidence (for in our appellate division equity practice in the respect discussed above is well understood and followed), I will note that I regarded the testimony of the plaintiff that he was present with his wife and her brother Jeremiah and his wife, and saw them execute and acknowledge the deeds, as "concerning" a personal transaction between him and his wife, and therefore incompetent; the transaction being the transfer by her of her title to the land from herself to the plaintiff and herself jointly. Holcomb v. Holcomb, 95 N. Y. 316; Clift v. Moses, 112 N. Y. 426; 20 N. E. 392; In re Eysaman's Will, 113 N. Y. 62, 20 N. E. 613, 3 L. R. A. 599; In re Dunham, 121 N. Y. 575, 24 N. E. 932; In re Bernsee's Will, 141 N. Y. 389, 36 N. E. 314.

Each of the foregoing decisions either expressly or in its effect disapproves of or overrules the cases of Simmons v. Sisson, 26 N. Y. 264, Lobdell v. Lobdell, 36 N. Y. 327, and Cary v. White, 59 N. Y. 336, which decide that the rule excluding such evidence does not relate to evidence by the interested or prohibited person, of a communication or occurrence in his presence between the deceased and a third person in which he did not participate. They all seem in turn, however, to be in direct conflict with the decision in O'Brien v. Weiler, 140 N. Y. 281, 35 N. E. 587, in which Cary v. White is expressly cited as authoritative. But in fact there was no decision by the court in Cary v. White that the rule did not extend to an occurrence or conversation between the deceased and a third person in the presence of the interested or prohibited person. The opinion of the learned judge there writing was concurred in by only one other judge, and the point was therefore not decided there at all. Why such an opinion should nevertheless be published as if it were the court's opinions. is of late years become a frequent question. Such an opinion often.

misleads the bar and lower bench for a generation; and then (after it has done its mischief) the court which published it gives out that it was never an official utterance at all, but only the views of one or a minority of its judges.

In respect of the plaintiff's evidence that the signature to the wife's deed was hers, that may seem also to be "concerning" the personal transaction between him and his wife, in that it goes to establish that such transaction took place; but there is precise authority for its competency. Simmons v. Havens, 101 N. Y. 427, 5 N. E. 73. The very recent case of Boyd v. Boyd, 164 N. Y. 234, 58 N. E. 118, is cited to the contrary; but the opinion on that head by the learned judge there writing is concurred in by no other judge; and the point was not involved in the actual decision of the court at all. That such opinion is neverthelss published seems strange; but of course it cannot be regarded as an official utterance, especially after the plain admonition not to heed such utterances given to bench and bar in Colonial City Traction Co. v. Kingston City R. Co., 154 N. Y. 493, 48 N. E. 900, as follows:

"A judicial opinion, like evidence, is only binding so far as relevant" (i. e., relevant to the actual decision of the court), "and when it wanders from the point at issue it no longer has force as an official utterance. The failure to read the opinion of courts with this fact in mind gives rise to much fruitless litigation."

As all the judges concurred in this warning, it would be clear that it must be taken as "an official utterance" were it not that the opinion which it knocks in the head (Colonial City Traction Co. v. Kingston City R. Co., 153 N. Y. 540, 47 N. E. 810) was also concurred in by all the judges. But however it is to be taken, the question why an appellate court should publish in the place which belongs to the court's opinion, an opinion which a majority of its judges refuse to adopt or concur in, remains a serious one to a trial judge. Though he may not be able to perceive a permissible reason for it, it is no doubt his duty to try to believe that there is one. The frequency of these so-called nonofficial utterances, and their citation as authority, are becoming a great burden to trial judges. It may not be amiss to point to another one of them in the very same volume. Smith v. Railroad Co., 164 N. Y. 491, 58 N. E. 655.

My personal observation of the witnesses rather inclined me to the plaintiff; but on careful consideration I think the weight of evidence is against him.

Judgment for the defendants without costs.