IN THE

# SUPREME COURT OF TENNESSEE

FOR THE

WESTERN DIVISION

APRIL TERM, 1923.

MELVILLE KLEIN *et al. v.* BRUCE YORK.*

(*Jackson.* April Term, 1923.)

1. **APPEAL AND ERROR.** On appeal from directed verdict evidence viewed most favorably to appellant.

On appeal from a directed verdict, it is necessary to review the facts, taking that view of the evidence most favorable to the party against whom it was directed. (*Post, pp.* 85-97.)

Acts cited and construed: Acts 1869-70, ch. 78, sec. 2; Acts 1870, T. & S. Code, sec. 3813d.

Cases cited and approved: Wildman Mfg. Co. v. Davenport Hosiery Mills, 147 Tenn., 551; Neely v. Carter, 96 Ga., 197; Holliday v. McKinne, 22 Fla., 153; Ware v. Burch, 148 Ala., 529; Kirksey v. Kirksey, 41 Ala., 626; Merritt v. Straw, 6 Ind. App., 360; Mason v Spurlock, 63 Tenn., 554; Montague v. Thomason, 91 Tenn., 168;

*For authorities discussing questions relating to nonexpert witnesses as to handwriting, see note in 63 L. R. A. 964.

Roy v. Sanford, 140 Tenn., 382; Minnis v. Abrams, 105 Tenn., 662; Royston v. McCulley, 59 S. W., 725; Sankey v. Cook, 82 Iowa, 125; In re Brown's Estate, 92 Iowa, 379; Ferrebee v. Pritchard, 112 N. C., 83; Rush v. Steed, 91 N. C., 226; In re La Grange Estate, 191 Iowa, 963; Britt v. Hall, 116 Iowa, 564; Bryan v. Palmer, 83 Kan., 298; Dillon v. Gray, 87 Kan., 129; Munger v. Myers, 96 Kan., 745; Fitch v. Martin, 84 Neb., 745; Peoples v. Maxwell, 64 N. C., 313; Halyburton v. Dobson, 65 N. C., 88; Ballard v. Ballard, 75 N. C., 100; Armfield v. Colbert, 103 N. C., 147; Sawyer v. Grundy, 113 N. C., 42; Simmons v. Havens, 101, N. Y., 472; Eagan v. Powers, 51 Hun, 642; Wing v. Bliss 55 Hun, 603; Dolan v. Leary, 68 N. Y. Supp., 91; Boyd v. Boyd, 164 N. Y., 234; Walker v. Pitman, 18 Tex. Civ. App., 519; Williams v. Farmers' Nat. Bank, 201 S. W., 1083; Daniels, Exr., v. Foster et-al., 26 Wis., 686; Sawyer v. Choate, 92 Wis., 533; Josephs v. Briant, 115 Ark., 538; Johnson v. Bee, 84 W. Va., 532; Faulkner v. Thomas, 48 W. Va., 148.

Cases cited and distinguished: Neely v. Carter, 96 Ga., 197; Montague v. Thomason, 91 Tenn., 168; Mason v. Spurlock, 63 Tenn., 554; Sankey v. Cook, 82 Iowa, 125; Johnson v. Bee, 84 W. Va., 532.

Code cited and construed: Sec. 5598 (S.).

2. **WITNESSES.** Plaintiff suing estate on lost note may not testify to knowledge of deceased's handwriting acquired by reason of note in question.

In action on a lost note against a decedent's estate, while it was competent for plaintiff to state that the handwriting and signature of the note was that of deceased, he could not testify that he became acquainted with deceased's handwriting wholly or partially by reason of the note in question. (*Post, p.* 97.)

3. **WITNESSES.** Plaintiff suing estate on lost note competent to testify it was in decedent's handwriting.

Klein v. York.

In action on a lost against decedent's estate, plaintiff was not incompetent under Shannon's Code, section 5598, to testify that the handwriting and signature of the note was deceased's. (*Post, p.* 97.)

Cases cited and approved:  Ware v. Breach, 148 Ala., 529;  Roy v. Sanford, 140 Tenn., 382.

FROM SHELBY.

Appeal from the Circuit Court of Shelby County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court.—HON. J. P. YOUNG, Judge.

RAYMOND O. VALLEY, for plaintiffs.

WALTER CHANDLER, for defendant.

MR. MALONE, Special Judge, delivered the opinion of the Court.

This case comes before the court upon petition for *certiorari.*

The respondent, Bruce York, filed a claim against the estate of W. J. Klein, deceased, in the probate court of Shelby county, in the principal sum of $675, basing his claim upon a note which had become lost. He filed a copy of the note with his claim. The claim having been allowed, the petitioners here, beneficiaries of the estate of the said W. J. Klein, appealed the case to the circuit court, where the same was tried before a jury, under a plea of *non est factum* interposed by the administratrix of the

estate. After certain evidence, including the evidence of the respondent York, had been heard, the trial judge instructed the jury to bring in a verdict disallowing the claim, which was accordingly done.

York, the plaintiff below, appealed the case to the court of civil appeals, which court, in an opinion by Mr. Justice CLARK, reversed and remanded the case.

The question earnestly and ably debated here is this:

Could York, the claimant and plaintiff below, be allowed to testify that he had had in his possession a note in the handwriting of the decedent, and bearing the genuine signature of the decedent, proving the amount and terms of the note by other witnesses?

On behalf of the petitioners it is claimed that to permit such action is to permit an evasion of the Tennessee statute (Shannon's Compilation, section 5598), which provides:

"In actions or proceedings by or against executors, administrators, or guardians, in which judgments may be rendered for or against them, neither party shall be allowed to testify against the other as to any transaction with or statement by the testator, intestate, or ward, unless called to testify thereto by the opposite party. (1869-70, chapter 78, section 2.)"

On behalf of the respondent it is insisted that proving the signature of a note was not proving a transaction, or conversation with, or statement by, the decedent within the meaning of this act.

The trial judge adopted the view of the petitioners, and the court of civil appeals accepted the view of the respondent.

As the case was decided below on a directed verdict, it becomes necessary to review the facts, taking that view of the evidence most favorable to the contentions of the plaintiff below, against whom the verdict was directed. *Wildman Mfg. Co. v. Davenport Hosiery Mills* (1922), 147 Tenn., 551, 249 S. W., 984.

The plaintiff below, Bruce York, was allowed to state that he was acquainted with the decedent; that he had several business transactions with him; that he had a transaction involving a note; that the note was not in his possession; that he borrowed money from Dr. Graham, and put up this note as collateral; that Dr. Graham claimed to have given the note back to plaintiff, but if he did plaintiff could not find it and did not know what had become of it, after diligent search; that the note while in the possession of Dr. Graham became due, was not paid, and was protested; that he had a certified copy of the protest by the notary public, and filed the same as an exhibit.

He further testified as follows:

"Q.    I believe you stated you had several different transactions with the deceased? A.    Yes, sir.

"Q.    I will ask you if you are acquainted with the handwriting of the deceased? A.    Yes, sir.

"Q.    I will ask you if the handwriting and the signature of this note that you had in your possession was in the handwriting of the deceased? A.    Yes, sir."

All of this testimony was objected to by the administratrix, on the ground that it was testimony relating to a transaction with a deceased person, and was incompetent under the statute already mentioned.

While this objection was being argued, and before the

court ruled on the admissibility of the testimony, two other witnesses for plaintiff appeared in court, and for their convenience they were then examined.

The first of these witnesses, George B. Coleman, testified that he was called by the National City Bank to protest a note; that he went to the bank and was given a note signed by W. J. Klein, the decedent, indorsed by Dr. Frank Graham and by Bruce York, payable at the First National Bank; that he presented the note to the First National Bank which declined to pay it; that he thereupon, as a notary public, protested the note for nonpayment, his certificate of protest containing a *verbatim* copy of the note, which was read into the record as follows:
"$675.00.              Memphis, Tenn.   March 23rd, 1920.

"Eight months after date I promise to pay to the order of Bruce York six hundred and seventy-five ($675) dollars with interest at the rate of eight per cent. from date until paid.  For value received, and all attorney's fees and other costs and charges incurred in the collection of this note. Payable First National Bank, Memphis, Tennessee.

        [Signed]            W. J. KLEIN.
"Pay to Dr. Frank Graham.

                        "BRUCE YORK."

The witness identified this copy as an accurate copy in every detail of the note which he protested, and filed as an exhibit to his testimony a duplicate carbon copy of the certificate of protest.

The other witness, Dr. Frank Graham, testified that he loaned Bruce York some money, and took as collateral security a note for "six hundred and some odd dollars that was signed by Mr. Klein;" that the copy handed him was,

according to his recollection, a copy of the note which Mr. York gave him as collateral security; that the note fell due while in the possession of witness, and was not paid, and witness had the National City Bank protest the same for nonpayment; that as a result of certain transactions stated in detail he treated the loan as paid, and returned to York the Klein note which had been put up as collateral; that he had not seen this note since he gave it to Mr. York; that he loaned the money to York between November and December, 1920, as he recollected; that he does not recall paying any particular attention to the signature of the note, but does recall the fact that the note was signed by a man who owned his farm at that time, and witness believed this would make the note perfectly good.

The court then ruled on the objection to plaintiff's testimony, saying:

"In this case, it is sought to show, if the court understands aright, that the plaintiff may testify as to whether he knew the handwriting of the deceased and whether the signature on the note is in the handwriting of the deceased. The court holds that the signature on the note is a part of the transaction and part of the matter in contest between them and that it is incompetent for the plaintiff, an interested party, to testify that the signature on the note is in the handwriting of the deceased, W. J. Klein."

At the end of this testimony the plaintiff rested, and counsel for the administratrix made a motion for a directed verdict, whereupon the court granted the motion and instructed the jury that "under a rule of law, there can be no recovery in this suit now under the evidence adduced in this case relative to the note."

In his motion for a new trial the plaintiff York speci-fied, among other grounds, the following:

(a)    "That the court was in error in refusing to allow the following testimony of plaintiff, Bruce York, to go to the jury:

"Q.  'I will ask you if the handwriting and the signa-ture of this note that you had in your possession was in the handwriting of the deceased?'  A.   'Yes, sir.' "

(b)·  That the court was in error in directing a ver-dict for defendants under the testimony adduced.

It seems to be conceded in the briefs of both parties that the determinative question is the competency or in-competency of the plaintiff's evidence already quoted, as to the handwriting and signature of the note.

There are two conflicting lines of cases on this question.

The petitioners cite and rely upon the cases of *Neely* v. *Carter,* 96 Ga., 197, 23 S. E., 313; *Holliday* v. *McKinne,* 22 Fla., 153; *Ware* v. *Burch,* 148 Ala., 529, 42 South·, 562, 12 Ann. Cas., 669; *Kirksey* v. *Kirksey,* 41 Ala., 626; *Mer-ritt* v. *Straw,* 6 Ind. App., 360, 33 N. E., 657.

They also rely upon the reasoning of this court in the cases of *Mason* v. *Spurlock,* 4 Baxt., 554; *Montague* v. *Thomason,* 91 Tenn., 168, 18 S. W., 264; *Roy* v. *Sanford,* 140 Tenn., 382, 204 S. W., 1159.

The respondent here, plaintiff below, in support of the judgment of the court of civil appeals, insists that the question is decided by our own cases of *Minnis* v. *Abrams,* (1900), 105 Tenn., 662, 58 S. W., 645, 80 Am. St. Rep., 913, and *Royston* v. *McCulley* (1900; Tenn.), 59 S. W., 725, 52 L. R. A., 899.

And he further contends that the clear weight of au-

thority supports this view as to competency of this evidence, citing 30 A. & E. Enc. Law (2d Ed.), 1033; *Sankey v. Cook* (1891), 82 Iowa, 125, 47 N. W., 1077. *In re Brown's Estate,* 92 Iowa, 379, 60 N. W., 659; *Ferrebee v. Pritchard,* 112 N. C., 83, 16 S. E., 903; *Rush v. Steed,* 91 N. C., 226; *In re La Grange Estate* (March, 1921), 191 Iowa, 963, 181 N. W., 807; *Britt v. Hall,* 116 Iowa, 564, 90 N. W., 340; *Bryan v. Palmer* (1910), 83 Kan., 298, 111 Pac., 443, 21 Ann. Cas., 1214; *Dillon v. Gray* (1912), 87 Kan., 129, 123 Pac., 878; *Munger v. Myers* (1915), 96 Kan., 745, 158 Pac., 497; *Fitch v. Martin* (1909), 84 Neb., 745, 122 N. W., 51; *Peoples v. Maxwell,* 64 N. C., 313; *Halyburton v. Dobson,* 65 N. C., 88; *Ballard v. Ballard,* 75 N. C., 100; *Armfield v. Colvert,* 103 N. C., 147, 156, 9 S. E., 461; *Sawyer v. Grundy,* 113 N. C., 42, 18 S. E., 79; *Simmons v. Havens* (1886), 101 N. Y., 472, 5 N. E., 73; *Eagan v. Powers,* 51 Hun, 642, 4 N. Y. Supp., 592; *Wing v. Bliss,* 55 Hun, 603, 8 N. Y. Supp., 500; *Dolan v. Leary* (1901; Sup.), 68 N. Y. Supp., 91; *Boyd v. Boyd,* 164 N. Y., 234, 58 N. E., 118; *Walker v. Pitman* (1898), 18 Tex. Civ. App. 519, 46 S. W., 117; *Williams v. Farmers' National Bank* (1918; Tex. Civ. App.) 201 S. W., 1083; *Daniels, Exr., v. Foster et al.,* 26 Wis., 686; *Sawyer v. Choate,* 92 Wis., 533, 66 N. W., 689; *Josephs v. Briant* (1914), 115 Ark., 538, 172 S. W., 1002; *Johnson v. Bee,* (1919), 84 W. Va., 532, 100 S. E., 486, 7 A. L. R., 252, 256, 257.

1. The reasoning of the line of cases cited by the petitioners is shown in the following extract from *Neely v. Carter* (1895), 96 Ga., 197, 23 S. E., 313, where the court after stating that the alleged grantee under a lost deed could not testify to the fact that she saw a deceased

grantor sign the deed, further says (96 Ga., 201-203, 23 S. E., 315) :

"We think it quite clear that she could not be permitted to testify indirectly to that which she would not be permitted to swear to directly. To swear to the genuineness of a signature purporting to have been made by one of the deceased makers would only be another way of proving the physical fact of execution. Such proof would be merely secondary evidence, the object of which would be to supply the place of direct evidence of actual execution, in a case where higher and more satisfactory proof of that fact was not forthcoming or available. The policy of the law, which clearly would exclude Mrs. Carter from giving direct evidence of execution, likewise would render her incapable of giving evidence of a secondary character which would accomplish the same result, and which, indeed, would be worthless for any other purpose than that of supplying the very evidence she would be precluded from giving by direct and positive proof. No other view of the question seems tenable. . . . The temptation of a witness to swear falsely when offered to supply secondary evidence, is just as strong as when the witness is called upon for positive proof; while the fear of punishment for perjury, remote at best, is almost, if not entirely removed where a witness merely undertakes to state his opinion as to the genuineness of a given signature, instead of positively asserting direct knowledge of the fact of the execution of a paper."

It is further argued in the able brief filed on behalf of petitioners that to permit plaintiff's evidence in the present case would be to establish a rule whereby estates of

decedents might be defrauded in the following manner:

An unscrupulous person might forge a note purporting to bear the signature of the testator, and show this note to one or more persons who might be acting in entire good faith, and then, after destroying the note so that the forgery could not be proved, might establish the genuineness of the signature by his own testimony, and might then prove the contents by the innocent persons to whom he had shown the note.

It is further urged that in the case of *Minnis* v. *Abrams,* 105 Tenn., 662, 58 S. W., 645, 80 Am. St. Rep., 913, the document in question was not lost, but was actually produced in court, so that the personal representative had an opportunity to contest its genuineness, and it is said that this is true of many of the authorities cited and relied on by the respondent.

2. In reply, it is claimed by the respondent that the correct rule is shown in the following extract from 30 A. & E. Ency. Law (2d Ed.), 1033:

"*Handwriting.*—Testimony that a document is or is not in the handwriting of the decedent involves merely a matter of opinion and not a personal transaction or communication between the witness and the decedent, if the knowledge thereof was obtained otherwise than through the transaction undergoing investigation. Therefore, according to the great preponderance of authority, a witness may testify that he knows the decedent's handwriting, and that the signature to the document in question is genuine, and for the same reason he may state that the signature is not genuine; but it is not competent for the witness to testify

that he saw the decedent sign the paper"—citing, in the notes, numerous cases, including *Minnis* v. *Abrams,* supra.

3.   Is this question settled by our own decisions?

In the case of *Minnis* v. *Abrams,* already mentioned, the bill was filed to collect a balance on a note for $400, which on its face appeared to be barred by the statute of limitations.   The complainant, however, relied on a new promise made by a letter written by decedent, in which the deceased assured complainant the statute of limitations should never run against the debt.   An administrator *ad litem* having been appointed, a question arose in the case as to the competency of certain evidence, in view of the Tennessee statute already quoted.   The court of chancery appeals excluded all testimony by the complainant as to communications or transactions with the deceased, but held that it was competent for complainant to testify to the independent fact that he had this letter in his possession, and that it was in the handwriting of the decedent. The letter, itself, was filed in the case.

After stating that the policy of the statute is "to provide that when one of the parties to a litigated transaction is silenced by death the other shall be silenced by law," the court continues (105 Tenn., at pages 664, 665, 80 Am. St. Rep., 913) :

"We do not think proof by the surviving party that he had a letter in his possession, and that the letter is in the handwriting of the deceased, is in contravention of the statute.   These are independent facts, which we hold may be proven by either party to the suit.   It was held by this court in *Montague* v. *Thomason,* 7 Pick., 173, that preliminary to the introduction of other proof it was competent

for the surviving party to state as independent facts that he at a particular time possessed a letter or written instrument, and that it had been unintentionally lost, but he was not competent to testify as to its contents. See *Mason* v. *Spurlock*, 4 Baxt., 563."

In the case of *Montague* v. *Thomason* (1892), 91 Tenn. 168, 18 S. W., 264, suit was brought by the representative of a decedent on a promissory note, and the defense was that the note in question had been paid by a renewal note which renewal note had been collected as an asset of the testator before the institution of the present suit.

The defendant Thomason, one of the makers of the note on which suit was brought, testified, over objection, that he received a letter from the decedent (which he had lost), authorizing a renewal of the note sued on, and promising to send him, when the renewal note was received, the old note on which suit had been brought; that he (Thomason) thereupon caused the renewal note to be executed, and forwarded the same to the decedent, but never did receive the old note which was paid by the renewal note.

Speaking of this testimony, the court says (91 Tenn., at page 172, 18 S. W., 265):

"The testimony of Thomason includes both a transaction with and a statement by the deceased, and, consequently, is doubly incompetent, within the prohibition of the statute in a twofold sense. He testifies to the extinguishment of the note sued on by the execution and delivery of another note in its stead. If that was not a transaction, it would indeed be impossible to state what would constitute a transaction between the maker and payee of a note."

In discussing the point, the court further said (91 Tenn., at page 173, 18 S. W., 265) :

"Preliminary to the introduction of other proof it was competent for Thomason to state, as independent facts, that he at a particular time possessed a written instrument or letter, and that it had been unintentionally lost (see intimation to this effect in *Mason* v. *Spurlock,* 4 Baxt., 563) ; but if claimed to have been written by Hossell, deceased, he was not competent to testify as to its contents, or to prove by his own oath what he did in response thereto."

In the case of *Mason* v. *Spurlock* (1874), 4 Baxt., 554, suit was brought upon a claim alleged to be due the estate of a decedent, which the defendant Spurlock insisted in his answer that he had paid, and for which he insisted he had taken a receipt which was lost during the Civil War, about 1863. After stating that the burden was on the defendant Spurlock to establish payment, in view of certain written obligations executed by him, and offered in evidence by the complainant, it was said, in arguing out the question of fact (page 563), that Spurlock proved by another witness that he had some valuable papers destroyed in 1863, but did not attempt to prove that he ever had such a receipt as he was claiming, and the court continues :

"It is certainly not clear that Spurlock would not have been a competent witness himself, to prove the loss or destruction of the receipt, although he could not have been a witness as to any transaction with or statement by Stone in his lifetime. See act of 1870, T. & S. Code, section 3813d. Yet he did not offer himself as a witness.

Under the circumstances, the presumption of payment from the lapse of time is not strong."

While it may be true, as insisted by the petitioners, that the remarks in *Mason* v. *Spurlock,* and *Montague* v. *Thomason,* supra, were made by the court *arguendo* and do not actually decide the point, yet the case of *Minnis* v. *Abrams,* is an actual decision, and can only be distinguished on the ground pointed out by the petitioners, to-wit: That in that case the disputed document was before the court, and subject to the court's scrutiny and to the examination of expert witnesses.

This distinction, undoubtedly, does exist between that case and the instant case, and it may therefore be said that no one of our own cases decides the exact question.

We are constrained to think, however, that the *dicta* in the other cases (if such they be), and the actual decision in *Minnis* v. *Abrams,* indicate a construction of our statute in line with the majority opinion on this disputed point.

The reasoning of the courts adopting this view is in substance, that the expression of opinion as to the genuineness of a decedent's handwriting is not a matter which could be contradicted by the decedent if he were then alive and able to testify.

As stated in the leading case of *Sankey* v. *Cook* (1891), 82 Iowa, 125, 128, 47 N. W., 1077, 1078:

"The object of the statute is to so close the lips of the living party to the transaction that he cannot give testimony, in regard thereto, that, because of the decease of the other party, he cannot dispute, if untrue. If Cook were alive he could not dispute Sankey's evidence that, in his opinion, the papers were in his (Cook's) handwriting; that

is, it is not so in the nature of a personal transaction that he could dispute it as such. It is but evidence of a fact existing independent of a personal transaction."

It is strongly urged on behalf of the petitioners that the adoption of this view affords an opportunity for fraud against the estate of deceased persons in the manner hereinbefore detailed. But as stated by the supreme court of West Virginia, in the well-considered case of *Johnson* v. *Bee* (1919), 84 W. Va., 532, 100 S. E., 486, 7 A. L. R., 252, 256:

"If . . . the ultimate effect of evidence admitted against the estate of a deceased person were the sole test of admissibility, much evidence not relating to personal transactions or communications would be inadmissible."

We cannot extend the language of the statute beyond its legitimate meaning because a case of possible fraud may be imagined. It may, moreover, be suggested that under the rule contended for by petitioners it might be difficult, if not impossible, to prove a lost note against the estate of a decedent, however honest and well founded the claim.

In the case of *Johnson* v. *Bee,* supra, wherein the two lines of authorities are discussed, it is further said:

"A decided weight of authority affirms the right of an interested person or party to testify to the handwriting of a signature purporting to be that of a deceased person, if he is otherwise qualified, even though he would be an incompetent witness to testify to the act of signing."

It is also said (7 A. L. R., 257):

"The chief purpose of the statute is to prevent the living party to a transaction from testifying because the

other, being dead, cannot be produced to contradict him, in case of false swearing. Denial of right to the former to testify puts them on an equality. *Faulkner* v. *Thomas*, 48 W. Va., 148, 35 S. E., 915. If so, its reason does not apply here. One party cannot very well contradict another's mere opinion."

It must, of course, be borne in mind that the plaintiff or interested party cannot show that he acquired his familiarity with the handwriting of the deceased in the transaction under investigation. Thus the plaintiff in the present case could not testify that he became acquainted with the handwriting of deceased wholly or partially by reason of the note in question. The party's knowledge of the handwriting must be based on other facts or transactions. 30 A. & E. Ency. Law (2d Ed.), 1033; *Ware* v. *Burch* (1906), 148 Ala., 529, 42 South., 562, 12 Ann. Cas., 669.

Petitioners earnestly insist that the case is governed in principle by the decision of this court in *Roy* v. *Sanford* (1918), 140 Tenn., 382, 204 S. W., 1159. In that case the holder of the note testified, in substance, that he indorsed it to the plaintiff Roy, "merely for the purpose of making himself competent as a witness against the administrator, to prove the execution of the note." It was very properly held that this was a mere subterfuge to avoid the operation of the statute—a species of "legal jugglery" not to be tolerated.

No such case is presented here.

We are, therefore, of opinion that the trial judge erred in excluding the testimony of plaintiff hereinbefore set out, and in directing a verdict for the defendants; and the judgment of the court of civil appeals will be affirmed, and the case remanded for further proceedings.