## SHIRTS *v.* ROOKER, ADMINISTRATOR.

[No. 2,668. Filed January 12, 1899.]

INSTRUCTIONS.—*Partnership.—Decedents' Estates.— Claims.*—No error was committed in instructing the jury in the trial of an action on a claim against a decedent's estate, filed by a member of a law firm for legal services, that if the jury found that the claim or any part thereof was for any transaction had between decedent and any firm of which plaintiff was a partner, and that such transaction was a part of the firm business plaintiff could not recover. *pp.422-424.*

Shirts *v.* Rooker, Adm.

EVIDENCE. — *Decedents' Estates.*—*Partnership.*—The admission in evidence of checks given by decedent payable to the law firm of which plaintiff was a member would not amount to reversible error in the trial of an action on a claim against a decedent's estate, where the question was in issue whether the services mentioned in the claim were the personal services of plaintiff, or the services of the firm of which he was a member.  *p. 424.*

SAME.—*Decedents' Estates.—Partnership.*—No error was committed in striking out the testimony of a witness in explanation of a letter written to decedent by the firm of which plaintiff was a member in the trial of an action on a claim against the decedent's estate, where the letter was unambiguous, and the evidence stricken out was not in fact an attempt to explain the letter, but simply the statement of the witness' conclusion that the contents of the letter had nothing to do with the action.  *p. 424.*

SAME.—*Contradiction of Written Instrument.*—Evidence tending to contradict the terms of a check introduced in evidence is properly excluded, where such check was unambiguous.  *pp. 424, 425.*

SAME.—*Decedents' Estates.—Administrator as Witness.*—An administrator is a competent witness as to his decedent's signature to a written contract in favor of the estate, in an action on a claim against such estate.  *p. 425.*

SAME.—*Decedents' Estates.*— No error was committed in admitting in evidence certain leases in the trial of an action on a claim against a decedent's estate, a part of the claim being for renting and looking after decedent's farms, where the leases tended to show that decedent looked after his farms himself.  *pp. 425, 426.*

SAME.—*Decedents' Estates.—Documentary Evidence.*—A letter, written by the law firm of which plaintiff was a member to decedent, was properly admitted in evidence in the trial of an action on a claim against such decedent's estate for the purpose of showing that decedent was dealing with the firm instead of plaintiff alone, where the question was in issue whether the services for which the claim was filed were the personal services of the plaintiff, or the services of the firm of which he was a member.  *p. 426.*

SAME.—*Check.—Evidence of Payment.—Presumption.*—The fact that a check was marked "paid," and was found among the papers of decedent who drew it, would raise the presumption that the check had been paid.  *pp. 426, 427.*

From the Marion Circuit Court.  *Affirmed.*

*Pickens, Cox & Kahn,* for appellant.

*William V. Rooker,* for appellee.

ROBINSON, J.—Appellant appeals from a judgment in appellee's favor on a claim filed by appellant against the estate of appellee's decedent. Overruling appellant's motion for a new trial is assigned as error. The claim is made up of various items, consisting of renting and looking after a farm from 1888 to 1891; money paid certain parties named for the use and benefit of decedent; feed and care of a horse, pasture, and certain named services as an attorney. It appears from the evidence that, during the time embraced in the claim, appellant was a member of a firm of lawyers who were more or less engaged in the service of decedent in a professional way. There is some evidence tending to show that there was a final settlement by the parties in February, 1891. Appellee's decedent died in May, 1896. There was no evidence to support a part of the claim, and that part has not been argued by appellant's counsel in their brief.

Complaint is made in this court of that part of instruction four given to the jury by the court of its own motion which reads as follows: "If you find that any item charged in the plaintiff's claim herein is the same or any part of any transaction had between the decedent and any firm of which plaintiff was a partner, and that such transaction was a part of the firm business, the plaintiff cannot recover for the same in this action." The claim filed is not prosecuted by any firm, nor in the right of any firm. It purports to be personal transactions between the decedent and claimant. The evidence shows that appellant during the time covered by the items in the claim was a member of a firm of practicing attorneys, and that some of the items in the claim are for professional services as an attorney. The instruction does not, in effect, tell the jury, as claimed by counsel, that appellant could not agree with the decedent to do anything in his individ-

ual capacity for the decedent concerning any matter of which appellant's firm had charge, even with the consent of the other members of the firm. It is not to be denied that a member of a firm, with the firm's consent, might contract as an individual in the business in which the firm is engaged. And the instruction does not deny this right. It expressly refers to a transaction with the firm of which the claimant was a member, and to firm business. If appellant was a member of a law firm, and such firm was doing the general law business of the decedent, the presumption would be, in the absence of any express contract to the contrary, that services performed by appellant as a lawyer were on behalf of the firm. And in such case the burden would be upon appellant to show an agreement between him and the decedent that such services were personal to him, and that he, and not the firm, was to be paid therfor. This the court told the jury in the fifth instruction. This was not telling the jury, as argued, that before the value of services can be recovered, there must be an agreement between the parties that the services are to be rendered. Where one is a member of a law firm, his legal services are presumed to be in the firm's behalf; and, if he is acting in his individual capacity, the burden is on him to show that fact. The members of a law firm constitute one person in law, and the act of one in the course of the partnership business is the act of all. It was a question properly left to the jury whether appellant was at the times in question acting individually, or as a member of the firm. See *Green* v. *Milbank*, 3 Abb. N. C. 138. Thus, it is said in Bates on Partnership, section 447: "If the contract is within the scope of the business, the mere fact that a single partner is dealt with is immaterial, where not expressly on his

individual credit, and the contract will be deemed to be with the firm unless the contrary appears."

The fourth, fifth, and sixth reasons for a new trial relate to the admission in evidence of certain checks drawn by decedent in the year 1891, and payable to the firm of which appellant was at the time a member. It appears from the evidence that during the times covered by the items in appellant's claim the law firm of which he was a member had done some legal business for decedent. We think these checks would tend to show the manner in which the parties did business, and, taken in connection with all the other evidence in the case, would give some light on the question whether the services mentioned in the claim were the personal services of appellant, or the services of the firm of which he was at the time a member. The theory of the defense was that appellant had been paid for all services he had rendered the decedent. The evidence showed that as a rule the parties were punctual in making settlements, and it was proper to show the business methods of the parties in other transactions of a similar nature. Even if we should admit that these checks were immaterial for any purpose, we could not say their admission in evidence was such error as would warrant a reversal of the cause.

The seventh reason for a new trial was striking out the testimony of a witness concerning a certain letter introduced in evidence. The letter was written by the firm of which appellant was a member, and was addressed to the decedent. It is in no sense ambiguous, and in fact the evidence stricken out was not an attempt to explain the letter, but was simply the statement of the witness' conclusion that the contents of the letter had nothing to do with anything in this action.

The tenth reason for a new trial was the refusal of

the court to permit a witness to testify that a certain check introduced in evidence was in payment for services other than those named in the check. The check is not ambiguous, and states that it is in full payment for certain services therein named. The effect of the offered evidence would be to contradict the terms of the instrument itself, and was properly excluded. For the same reason the offered evidence of the same witness as to certain other checks, as set out in the eleventh reason for a new trial, was properly excluded. Several of these checks were payable to the firm of which the witness was himself a member.

The twelfth reason for a new trial was permitting appellee, administrator, to identify the signature of James I. Rooker, the decedent, to a certain contract. It is true, this is a proceeding in which an administrator is a party, and involves a matter which occurred during the lifetime of the decedent, and a judgment or allowance may be made or rendered for or against the estate which he represents, and he is a necessary party to the record; but, his interest is not adverse to the estate, nor is he an incompetent witness as to such matters in favor of the estate. Section 506, Burns' R. S. 1894 (498, Horner's R. S. 1897). See *Walker* v. *Steele*, 121 Ind. 436.

The thirteenth and fifteenth reasons for a new trial relate to the admission of certain contracts in evidence. These contracts were leases of decedent's farms, executed by him in his lifetime. A part of appellant's claim was for renting and looking after these farms. There was some evidence that appellant had nothing to do with these leases, but that they were prepared by the decedent. While the contents of the leases themselves were not material, yet we fail to see how their introduction could be harmful to appellant. If it was a fact that the decedent looked after the

leases himself, it would tend to support appellee's theory, that decedent gave his farms his personal attention.·

The fourteenth reason for a new trial was the admission of a letter written to decedent by the law firm of which appellant was a member. The letter was read in evidence, and was afterwards all stricken out, except the first sentence. That sentence referred to the fact that appellant had written decedent on some matter before a letter from decedent on the same matter was received. The court, in admitting the letter, stated that it was admitted for the sole purpose of showing that appellant was in the habit of corresponding with decedent. It was proper for that purpose, and it might have some bearing on the question whether in these various transactions the decedent was dealing with the firm, or with appellant individually.

The sixteenth and seventeenth reasons for a new trial were the admission in evidence of a check drawn on the Indianapolis National Bank by James I. Rooker, and payable to appellant's law firm, Shirts & Vestal, and the admission of a note executed by decedent, and payable to the same firm. The check contained a stamp mark: "Indianapolis National Bank. Paid May 21, 1891." The objections urged to the admission of the check were that it had no indorsement, and no receipt, excepting the stamp mark; that there was no evidence as to whose stamp that was, or who put it on the check, and no evidence that it was presented for payment or paid. This check was dated May 21, 1891, for $267.91, and was payable "to note of Shirts & V., or bearer." A note signed by the decedent, dated February 19, 1891, for $262.50 due ninety days after date, and payable at the Indianapolis National Bank, to Shirts & Vestal, was introduced in evidence. The

note had been indorsed by the payees for collection to a Noblesville bank, and indorsed by that bank for collection to the Indianapolis National Bank. There was evidence that this note had been paid. There is no evidence that the bank held any other note executed by those parties, and, taking all the facts disclosed by the check and the note, and the fact that the note had been paid, we do not think it a violent presumption, in the light of all the evidence in the case, that the check was given in payment of the note. The fact that the check was marked "Paid," and was found among the papers of the decedent, who drew it, would raise the presumption that the check had been paid.

The next three reasons for a new trial relate to the admission in evidence of certain checks drawn by the decedent. As has been before said, these checks were competent as tending to show the manner of dealing between the parties, and we are unable to see how their introduction could prejudice the jury against appellant.

The twenty-first reason for a new trial was the admission in evidence of a letter written by appellant to decedent. The body of the letter has nothing to do with any of the matters in controversy. It tends neither to prove nor disprove any item of appellant's claim. It does not appear for what purpose it was admitted. It could have been excluded, and probably should have been; but its admission in evidence is not reversible error, because it contains nothing that could possibly have prejudiced the rights of appellant. A postscript to the letter refers to a statement of decedent's account inclosed, and says to the decedent that, if he has any items of account against appellant or son, to deduct the same from the amount of the account sent, and to send his note for the balance, payable at any time between the date of the letter, January

28, 1890, and the next 25th of December. We think this part of the letter was clearly competent, under the issues formed.

The last three reasons for a new trial relate to the exclusion of certain letters written by the decedent to appellant, and offered in evidence. Each of these three letters relates to matters not embraced in any of the items of appellant's claim. They had reference to a transaction, as appears from other evidence in the case, between the decedent and the firm of attorneys of which appellant was a member.

It is further argued that the verdict is not sustained by sufficient evidence, and is contrary to law. We have carefully read all the evidence, and can but conclude that there is evidence in the record upon which to base the jury's verdict. There was no evidence to support some of the items of appellant's claim, and as to the other items the evidence is conflicting. The record further discloses some evidence from which the jury could have concluded that, some years prior to decedent's death, he and appellant had a settlement of their mutual accounts, and that at the time this claim was filed nothing was due appellant from the estate of the decedent. Some of the evidence introduced on each side of the case may have been immaterial, but from the whole record, we believe a correct conclusion has been reached, and that the verdict of the jury should stand. We have examined all the questions presented by appellant's counsel, and find no error warranting a reversal of the case. Judgment affirmed.