# CHARLESTON.

FAULKNER *et al. v.* THOMAS *et al.*

Decided April 21, 1900.

1. DECEDENT'S ESTATE—*Claims—Liability.*

Two sons, with their respective fathers as endorsers, executed a note to a bank for one thousand five hundred dollars, to obtain the money to start the sons in a partnership business, with the understanding and agreement between themselves, as an inducement thereto, that each son and respective father was to be responsible for one-half of such note, and not responsible for the other half, except to the bank. Before the note matured, the business, under the management of one of the sons, proved a failure. The other son then took charge of it and wound it up, realizing only two hundred dollars out of the social assets. This amount he applied on the note, leaving a balance of one thousand three hundred dollars, which he paid out of private funds. The other son being hopelessly insolvent, the father of the latter acknowledged his liability therefor, and agreed to refund one-half of such balance. Dying without doing so, the paying son presented the same against his estate. *Held*, that it was properly audited against such estate, and that such agreement could be established by parol evidence, and was not subject to the statute of frauds. (pp. 149, 150).

2. DECEDENT'S WRITTEN OBLIGATION—*Parol Evidence.*

A written obligation, after payment thereof, does not preclude the makers and endorsers from proving by parol evidence a contemporaneous oral agreement as an inducement thereto; fixing their ultimate liabilities among themselves in accord with the true consideration and purpose of entering into such obligation. (p. 151).

3. AGREEMENT—*Indemnity—Statute of Frauds.*

Where a father at the time of the execution of a note to a bank, as an inducement to the making thereof, agrees to be bound for his son's moiety, and to indemnify the other endorser and maker against the same, such agreement is an original undertaking on the part of the father, and is not a promise to answer for the debt, default, or misdoing of another, within the purview of the statute of frauds. (p. 152).

4. JOINT OBLIGOR PAYS—*Parol Evidence.*

The fact that the joint maker of a note pays the same at maturity and does not for a long time require an endorser to come in and contribute his moiety thereof under a verbal arrangement between the parties, but awaits until the death of such endorser,

and presents the same against his estate, is strong circumstantial evidence in rebuttal of such agreement; but it is not conclusive, and may be explained and overcome by sufficient competent parol evidence. (p. 152).

5. QUESTIONS OF FACT—*Commissioner.*

Questions of fact submitted to and found by a commissioner, and confirmed by the circuit court, will not be reversed by this Court unless the finding is plainly erroneous. (p. 151).

Appeal from Circuit Court, Berkeley County.

Bill by E. Boyd Faulkner and another against James E. Thomas and others. Judgment for defendants, and plaintiffs appeal..

*Affirmed.*

INGLES & NADENBOUSCH and FAULKNER, WALKER & WOODS, for appellants.

FLICK, WESTENHAVER & NOLL, for appellees.

DENT, JUDGE:

In the chancery suit of E. Boyd Faulkner and J. Baker Kearfott, executors, against Fannie Thomas and others, pending in the circuit court of Berkeley County, J. W. Miller filed before the commissioner and was allowed an account for the sum of eight hundred and seven dollars and eight cents against the estate of the decedent, A. J. Thomas. The executors excepted, the court overruled the exception and entered a decree accordingly and they appeal.

The facts are as follows: About the 27th day of June, 1894, J. W. Miller and George E. Thomas with their respective fathers, J. H. Miller and A. J. Thomas as endorsers, executed a note to the Bank of Berkeley Springs for the sum of one thousand five hundred dollars. The money was put into the partnership business of the two sons, Miller & Thomas. The partnership after being carried on about three months collapsed. J. H. Miller claims that on settlement thereof, there was only two hundred dollars of the assets applicable to the payment of the note, which was applied thereto and the residue thereof one thousand three hundred dollars he paid out of his individual funds. He says at the time this note was executed, it was understood between the parties by agreement then made that one-half of the

note was the obligation of George E. Thomas and A. J. Thomas, and as to this half he and his father were merely sureties to the bank, while both of the Thomases were principals as to them, and the same agreement applied to the other half as to himself and father, and that when he paid off the whole note he paid one-half as principal and the other half as surety for A. J. Thomas, and is entitled to recover the same from the estate of said Thomas, George E. Thomas being wholly insolvent. This arrangement is fully established by the testimony of J. W. Miller, George E. Thomas, J. H. Miller, James W. Thomas and John D. McCune. The testimony of J. W. Miller and George E. Thomas is wholly incompetent in so far as it relates to transactions and communications had with the decedent and must be considered expunged from the case, they being interested witnesses and parties to the suit. The testimony of J. H. Miller, although he was one of the obligors on said note is competent for the reason that he is neither a party to the litigation nor interested in the result thereof, so far as the record shows, nor does J. W. Miller derive any interest or title from him by assignment or otherwise. It is true he was a party to the contract, but is not now interested therein. His relationship does not disqualify him. He testifies as to the making of the note and fully establishes the agreement and says it was all done at the instance of A. J. Thomas, who desired to start George in business. The witnesses, James W. Thomas and John D. McCune, establish the fact that A. J. Thomas knew the note had been paid by J. W. Miller and acknowledged his liability for half thereof. These witnesses were competent, and the commissioner had the right to hear and weigh their testimony. In the case of *Trowbridge* v. *Stone,* 42 W. Va. 458, JUDGE HOLT says: "the policy of statute is to take away the incompetency of interest only where it can be contradicted by the one testified against, and carefully avoids putting the interested party on any other or higher ground than that of being made competent when his adversary can speak, for they are put on an equal footing in that regard, and when in the specified cases that cannot be done the interested party is excluded." J. W. Miller was under the statute competent to prove the payment of the note, for his evidence if not true could be contradicted by the officers of the bank. It was neither a transaction or communication had with the deceased. He also for the same reason could testify as to the loss of the note and how

much he paid out of his own funds and how much out of the funds of Miller and Thomas. The latter testimony was favorable to the decedent. If also his testimony as to the date of the note and the time of the discount were untrue, it could have been easily contradicted by the bank records. He is sustained therein by the evidence of J. H. Miller. These matters were not controverted before the commissioner where they could have been substantiated but were apparently admitted to be true. The real controversy between the parties is as to the agreement at the time the note was executed. This is fully established by competent oral testimony, the circumstances surrounding the transaction including the relationship of the parties and the after acknowledgments of the deceased. On the other hand the fact that J. W. Miller, being a maker, paid the note in full instead of calling on deceased, being an endorser to pay his half thereof, and then waiting for upwards of three years until death intervened before demanding payment, strongly tends to disprove his claim and if the cause was original in this Court might justify a finding against him. *Denton* v. *Lyttle,* 4 Bush. (Ky.) 597; *Talcott* v. *Coggswell,* 3 Day (Conn.) 512. But the commissioner having found in his favor and the circuit court having confirmed such finding this Court will be bound thereby unless the same is plainly contrary to the evidence. *Cann* v. *Cann's Heirs,* 45 W. Va.. 563. The appellants insist that admitting such an agreement to have been made proof thereof is inadmissible, first, because it contradicts or varies the term of a co-temporaneous valid written instrument, and second, it contravenes the statute of frauds in so far as it attempts to establish an oral promise to answer for the debt, default or misdoings of another. As to the first of these propositions the law is properly stated in 1 Am. & Eng. Enc. Law (2 Ed.) 343, to be: "Parol evidence by the weight of authority is admissible in general to show the real relation between the parties to a bill or note, and that the actual liability of the parties among themselves is not that which appears upon the face of the instrument; and this is upon the ground that the fact of suretyship is collateral to the written instrument and does not contradict or vary it." The written instrument is an expression of the contract between the holder of the one part and the maker and endorsers, guarantors or sureties on the other, and cannot be varied or contradicted by parol evidence to the prejudice of the holder. To hold otherwise would be to destroy the

value of commercial paper. But after the written instrument has been satisfied, it not being intended to be a binding contract between the endorsers and maker or sureties or guarantors, their true relation to each other may be shown by oral evidence to be different from that expressed on the face of the writing. In this instance the object of the parties in signing the note was not to settle the relation between the endorsers and the makers but was to obtain for the makers on the joint credit of the endorsers the sum of one thousand five hundred dollars to establish them in business. The principals were to be jointly liable and so were the endorsers, and all were to be liable to the bank furnishing the money, but as between the endorsers and makers the relationship was not finally determined, except in the absence of an agreement by parol or otherwise different from that evidenced by the writing. 1 Dan. on Neg. Ins., sec. 703; *Barry* v. *Ransom,* 12 N. Y. 462; *Easterly* v. *Barber,* 66 N. Y. 433; *Weston* v. *Chamberlin,* 7 Cush. 404; *Clapp* v. *Rice,* 13 Gray 403; *Guild* v. *Butler,* 127 Mass. 386; *Stephen* v. *Bank,* 88 Pa. St. 157; *Edelin* v. *White,* 6 Bush. (Ky) 408; *Schultz* v. *Noble,* 77 Cal. 79; *Bank* v. *Combe,* 47 Mich. 358; *Meggett* v. *Baum,* 57 Miss. 22; *Shelton* v. *Hurd,* 7 R. I. 403; *Neal* v. *Wilson,* 79 Ga. 736; *Hull* v. *Peer,* 27 Ill. 312; *Oldham* v. *Brown,* 28 Ohio St. 41; *McDonald* v. *McGruder,* 3 Peters, 474; *Phillips* v. *Preston,* 5 How. 278; *Webster* v. *Mitchell,* 22 Fed. Rep. 869; *Bank* v. *Bierne,* 1 Grat. 265; *Bank* v. *Vanmeter,* 4 Rand. 553; *Willis* v. *Willis,* 42 W. Va. 522. The rule is different in New Jersey. 43 N. J. L. 279.

Nor does the statute of frauds apply. The object of giving the note by the two fathers was to furnish the money for the two sons to go into business, each putting in seven hundred and fifty dollars and the agreement was that George E. Thomas and A. J. Thomas were to be liable for only one-half the note and were to save the Millers, father and son, from liability as to such half and vice versa with the Millers. That is, as to one-half the Thomases were principals and the Millers sureties, and so with the other half, the parties simply changing position. It being clearly a contract of indemnity between them and a very natural one. For if J. W. Miller in any event was to be liable for the whole debt, then A. J. Thomas was not doing anything towards assisting his son in business except to become security for his partner, and if such partner were solvent the son being insolvent such assistance would be nothing as the risk would be nothing

and Miller would simply be going into business furnishing funds and giving the younger Thomas a half interest therein. The proof showing that when the debt was contracted A. J. Thomas agreed to become responsible for half of it in so far as the Millers were concerned made it his individual debt for full consideration, and his undertaking was not a promise to answer for the debt, default or misdoing of another. *Barry* v. *Ransom* and other cases heretofore cited; *Blake* v. *Cole,* 22 Pick. 97; *Thomas* v. *Cook,* 8 B. & C. 728. The testimony of J. W. Thomas and J. D. McCune tends to show acknowledgments on the part of A. J. Thomas as to the original contract. Standing alone, they might be insufficient, as they would only show a promise without consideration to pay the debt of another, but taken together with the original agreement they explain and ratify it. There are some intimations, founded however on nothing more than suspicious circumstances, that J. W. Miller may have derived sufficient funds from the partnership property to pay off this debt and that this is a pretext between himself and George E. Thomas (who was left out of his father's will although his only son and his portion given to collateral devisees) for the purpose of enabling the latter to realize something from his father's estate. The evidence is entirely insufficient to sustain any such inferences especially in the face of the sworn testimony of the various witnesses, competent and incompetent. If it is true as apparently established by the legitimate proofs that J. W. Miller became liable for and paid this money at the instance and request of the decedent it is but just and right that the estate should refund it to him. The decree is affirmed.

*Affirmed.*