# CHARLESTON.

PEARL MCCREERY JOHNSON *et al.* v. I. E. BEE *et al.*

Submitted September 16, 1919.    Decided September 23, 1919.

1. WITNESS—*When Witness Competent as to Handwriting of Decedent.*

   The hand-writing of a deceased person is not necessarily nor always a personal transaction or communication between such person and another living and claiming rights under or against a document purporting to have been signed by the former; and, if the latter knows the hand-writing of the former and has obtained his knowledge thereof otherwise than by observation of the deceased person's act of writing, or some other personal transaction, he is competent to express his opinion as to the genuineness of the signature in question. (p. 536).

2. EVIDENCE—*When Grandchildren Competent as to Handwriting of Grandmother.*

   Grandchildren who have obtained their knowledge of their grandmother's hand-writing, only by inspection and repeated readings of letters from the grandmother to their mother, preserved by the family for a long period of time, for sentimental reasons, are qualified to testify to their opinions as to the genuineness of the grandmother's signature. (p. 536).

3. SAME—*When Opinion Evidence Admissible Though of Little Value.*

   The opinion of a witness, as to the genuineness of a signature, based upon limited opportunities for knowledge of the handwriting of the person whose signature is in question, may have but little probative value, but it is admissible. (p. 536).

4. SAME—*Only Experts Can Testify as to Genuineness of Signature.*

   As the opinions of non-expert witnesses testifying merely from comparison of signatures, as to the genuineness of a particular signature, are entitled to no greater weight than the opinions of the jurors or the judge, only experts can so testify. (p. 539).

5. SAME—*What Constitutes Handwriting Expert Stated.*

   To be competent for such purpose, however, a witness need not be a professional hand-writing student, critic or expert. It suffices that, in some way, he has acquired peculiar knowledge and skill respecting the determination of the genuineness of written instruments and signatures—more of such skill and knowledge than men ordinarily have. Bank cashiers are hand-writing experts within the meaning of the rule. (p. 539).

84 W. Va.

6. SAME—*Ancient Writing Admissible for Comparison as to Genuinenes of Signature.*

Ancient letters shown by the testimony of members of a family to have been written by the person whose signature is in question, to her daughter, and preserved, for sentimental reasons, long after the daughter's death, and ancient deeds purporting to have been signed by such person and found in a public office in which they were lodged for recordation, may be used as standards of comparison, on the issue as to the genuineness of the signature. (p. 540).

7. TRUSTS—*Evidence Insufficient to Show Investment of Trust Fund.*

A written and sealed, but unacknowledged, declaration by a married woman, of her intention to invest a trust found in her hands, in a certain tract of land then owned by her and her husband jointly, reciting the source of the fund, the previous conveyance of the land and intent thereafter so to invest the fund, is not sufficient to prove actual investment of the fund in the land. (p. 541).

8. HUSBAND AND WIFE—*Wife Cannot Covenant to Stand Seized of Land to Another's Use.*

Being unable to dispose of or encumber her real estate, without the joinder of her husband in a deed or other contract respecting it, in the manner prescribed by law, a married woman cannot alone covenant to stand seized of her land to the use of another, nor declare a trust in it. Though she may bind her equitable separate estate by her sole contract so as to make it liable in equity, her separate statutory estate stands upon a different footing and cannot be so bound. (p. 541).

9. DEEDS—*Husband and Wife—Wife Cannot Covenant to Stand Seized of Her Statutory Real Estate.*

While a declaration of intent to create a trust in property, made by a *feme sole* or other person having unlimited power of disposition of his property, may be binding upon him as a covenant to stand seized or as a bargain and sale of the property, if founded upon a valuable consideration, a married woman is incapable of binding her separate statutory real estate in such manner. (p. 541).

10. TRUSTS—*Declaration of Intent to Invest Trust Funds Does Not Create Trust.*

A mere declaration of intention to invest a trust fund in certain property does not create a trust therein. Impression of a trust upon the property requires actual investment of the fund in it. (p. 541).

11. APPEAL AND ERROR—*Equity—Under Prayer for General Relief There May be Decree for Trust Fund.*

Under the prayer for general relief in a bill seeking enforcement of an alleged trust in land, praying specifically therefor, disclosing *prima facie* liability for a sum of money on the part of the alleged trustee, but failing as to the trust in the land, for lack of proof of investment of the fund in the land, there may be a decree for the trust fund, upon a prayer therefor at the bar of the court. But, if the bill has been dismissed without the interposition of such a prayer in the court below or the award of such relief, the decree will be reversed in so far only as it dismissed the bill, and the cause remanded with leave to the plaintiff to ask a decree for the amount of the trust fund. (p. 544).

12. COSTS—*Allowance on Appeal to Party Substantially Prevailing.*

In such case, costs in the appellate court will be awarded to the appellants, as the parties substantially prevailing. (p. 544).

(WILLIAMS, JUDGE, dissenting in part).

Appeal from Circuit Court, Mercer County.

Suit by Pearl McCreery Johnson and others against I. E. Bee and others. From a decree dismissing the bill on final hearing, plaintiffs appeal.

*Affirmed in part. Reversed in part. Remanded.*

*P. H. M. Patterson, R. D. Bailey,* and *French & Easley,* for appellants.

*Hugh G. Woods* and *John M. McGrath,* for appellees.

POFFENBARGER, JUDGE:

The decree complained of dismisses, on final hearing, a bill filed for enforcement an alleged express executed trust in real estate, founded upon a valuable consideration.

The relationship of the parties is unquestioned. If there is such a trust as is set up and claimed in the bill, the plaintiffs are entitled to the benefit thereof. They are the heirs at law of M. H. Lacey who departed this life intestate prior to the year 1865, and, at the date of his death, owned a tract of land in Loudoun County, Virginia, containing 160 acres. On his death, the title to this land vested by descent in his two children, Mollie K. McCreery who died in 1887, leaving several children, and her brother, Andrew J. Lacey, who

died intestate in 1906, subject to the dower right of Mary L. Lacey, the widow, who afterwards married Doctor Isaiah Bee of Mercer County and became a resident of Princeton, West. Virginia.  She died in 1907, leaving as her survivors, her second husband and a son by him.  The former died in November, 1912.  The plaintiffs are the children of Mrs. McCreery and Andrew J. Lacey, claiming under the alleged declaration of trust made by their grandmother, Mrs. Mary L. Bee, in 1875, and the defendants are the representatives of the estate of Doctor Isaiah Bee, and the devisees under his wife's will.  Before his death, Dr. Bee conveyed to his son, I. E. Bee, and his daughter-in-law valuable real estate and gave them the balance of his estate by will.  Mrs. Bee gave all of her estate to her husband, in trust for a little girl reared by the family and known in this record as Nellie Bee Campbell.

The bill proceeds upon the theory of a substitution of certain real estate at or near Princeton, in Mercer County, for one-third of the Loudoun County land to the rents and profits of which the widow was entitled for the period of her natural life.  By a deed dated, January 11, 1875, Andrew J. Lacey, Mrs. McCreery and her husband, and Mrs. Bee and her husband conveyed the Loudoun County tract of land to John Riticor for a cash consideration of $1,600.00.  Of this sum, two-thirds belonged to the heirs absolutely, and they owned the other third, subject to the right of the widow to have the interest on it for and during her natural life. The bill charges that this one-third, less its pro rata share of the expenses of sale, was invested by Mrs. Bee in a tract of 130 acres of land, situated at or near Princeton, in Mercer County, and conveyed to her and her husband by a deed dated, March 3, 1875, and executed by William A. Wiley and Rhoda V. Wiley, his wife.  The deed conveying the Loudoun County tract of land was admitted to record, March 8, 1875, and the one conveying the Mercer County land, March 10, 1875.  The former was acknowledged on the day of its date and the latter on the day after that of its date. After an unavailing effort to set aside the will of Mary L. Bee and after the death of the late Senator John W.

McCreery, the plaintiffs found among his papers, between June 1, and June 15, 1917, a paper relied upon as a written declaration of the trust claimed by the bill.   Senator McCreery had been a lawyer, a business man and no doubt the legal adviser of Mrs. Bee, in the sale of the Loudoun County land.   The paper in question reads as follows:   "$523.00. Recd. of John . W. McCreery the sum of Five hundred & twenty three dollars, one-third of the amount realized from the sale of Laceyville, (a tract of 160 acres of land lying in the County of Loudoun, in the State of Virginia, which belonging to the estate of my late husband Dr. M. H. Lacey Deed,) after deducting costs and expenses for selling said land, total sum $1569.00, which said sum of five hundred and twenty-three 00/000 dollars, one third of the $1569.00, I am going to invest in a tract of land, lately bought of Wm. ·Wiley & Wife, lying near Princeton & containing 130 acres & receive the rents and profits of· said land, during my life time in lieu of interest on said sum (said land was conveyed by said ·Wiley & Wife to Dr. I. Bee & myself March 3rd /75, & recorded in Deed Book No. 7.   Witness my hand and seal, Mary L. Bee (SEAL), May 5th, 1875.''

The principal grounds of defense were, (1), non-execution by Mary L. Bee of the paper relied upon as a declaration of trust; (2), lack of actual investment of the said sum of $523.00 in the Mercer County land; and (3), legal inability or incapacity of the alleged declarant to carry the trust into execution, her right and title in the land having been irrevocably fixed, it is claimed, by the deed from Wiley and wife before the date of the declaration of trust.   On the trial, the court below found for the plaintiffs on the first issue thus tendered and for the defendants upon the second.   This result rendered it unnecessary, in the opinion of the court, to enter upon any inquiry as to the soundness of the third position taken by the defendant.   A contention of the plaintiff is that the instrument relied upon creates an executed trust, since a court of equity regards what a party has agreed· to do as having been done.

The objection interposed to the evidence of some of the .plaintiffs as to the hand-writing of the signature to the de-

claration of trust on the ground of incompetence by reason of interest, is not well founded, if we are to be governed by the weight of authority. Of course, none of these parties would be competent as witnesses to prove the actual signing of the paper by Mrs. Bee, nor to qualify themselves by observation of her act of signing any papers; for that would have been a personal transaction within the meaning of the law. *State ex rel* v. *Maxwell,* 64 N. C. 313; *Rush* v. *Steed,* 91 N. C. 226; *Wilber* v. *Gillespie,* 127 App. Div. (N. Y.) 604. A decided weight of authority affirms the right of an interested person or party to testify to the hand-writing of a signature purporting to be that of a deceased person, if he is otherwise qualified, even though he would be an incompetent witness to testify to the act of signing. In Iowa, Massachusetts, New York, North Carolina, Texas and Wisconsin, the courts hold that such testimony involves no more than a matter of opinion and does not relate to a personal transaction or communication between the witness and the decedent. 40 Cyc. 2327; *Ware* v. *Burch,* 148 Ala., 529; Annotated Cases 669, note 671; 25 Am. & Eng. Ency. L. 261. On the other hand, the contrary has been held in Alabama, Georgia, Kentucky, Missouri and Pennsylvania, as will be seen by reference to the books already cited. The intermediate court of appeals of Indiana has apparently held both ways as to such testimony. *Merritt* v. *Straw,* 6 Ind. App. 360; *Shirts* v. *Rooker,* 21 Ind. App. 420. The decisions adopting the minority rule take the view that, in as much as proof of the the signature authenticates or validates the document constituting the basis of the action, it virtually covers the whole case and impliedly proves the entire transaction represented by the document. If, however, the ultimate effect of evidence admitted against the estate of a deceased person were the sole test of admissibility, much evidence not relating to personal transactions or communications would be inadmissible. Much authority and the terms of the statute deny that it is the true test. As to facts not amounting to or involving such transactions or communications, interested witnesses are competent. This is an unqualified and unlimited implication arising from the very words of the statute. There is no proviso saying

they are competent only in the event that the fact has only limited probative force respecting the right involved or none at all. The statutory test is whether the fact in question is a personal transaction or communication or involves one. *Davidson* v. *Browning,* 73 W. Va. 276. The chief purpose of the statute is to prevent the living party to a transaction from testifying because the other being dead cannot be produced to contradict him, in case of false swearing. Denial of right to the former to testify puts them on an equality. *Faulkner* v. *Thomas,* 48 W. Va., 148. If so, its reason does not apply here. One party cannot very well contradict another's mere opinion. Whether the witnesses in question were competent depends upon the means by which they obtained the knowledge of the hand-writing of the decedent, constituting the basis of their opinions. They are not disqualified by reason of the nature of the fact to which their testimony relates.

The witnesses now under consideration, parties plaintiff, derived their knowledge of the hand-writing of Mrs. Bee from letters written by her to their mother, in their early childhood, preserved by their mother until her death and by them afterwards, for sentimental reasons, and frequently read and perused. These letters were not communications between them and Mrs. Bee, and they make no claim to any other source of knowledge of her hand-writing.

Their inspection of these letters also qualified them to express opinions as to the genuineness of the signature in question. There could scarcely be a better index to the genuineness of the letters than their preservation as heirlooms, tender rememberances or sacred relics, for more than forty years. Besides, it is clearly revealed by their contents—messages of solicitude, advice and love from mother to daughter. What is better calculated to make an impression on the minds of grandchildren/ than the written messages of their living grandmother to their dead mother? An administrator, having examined the papers of his intestate, may testify to his signature. *Sharp* v. *Sharp,* 2 Leigh 249; *Tucker* v. *Kellogg,* 8 Utah 11. A clerk through whose hands the correspondence of a deceased person with his employer has passed, may

testify as to the signature of the decedent. *Rex* v. *Slaney,* 5 C. & P. 213; *Reid* v. *Hodgson,* 1 Cranch. C. C. 491; *Reyburn* v. *Belotti,* 10 Mo. 597; *Titford* v. *Knott,* 2 Johns. Cas. (N. Y.) 211. A member of a family is qualified by reason of his knowledge of family correspondence in which he had no part. *Tuttle* v. *Rainey,* 98 N. C. 513.

Disqualification for lack of knowledge is charged against S. F. Cleghon and E. M. Senter, the former having had business transactions with Mrs. Bee in 1886, 7 and 8, and the latter having received two letters from her in 1890 or 1891. On the question of admissibility, the extent of the knowledge of the witness is not controlling. However limited it may be, he is entitled to express his opinion. Meagerness of knowledge or limitation of opportunity goes only to the weight of the evidence. *Flowers* v. *Fletcher,* 40 W. Va. 103; *Pepper* v. *Barnett,* 22 Gratt. 405; *Cody* v. *Conly,* 27 Gratt. 313; *Rogers* v. *Ritter,* 12 Wall. 322; 25 Am. & Eng. Ency. L. 259, 262.

The clerk of the county court of Mercer County, after having produced and filed five deeds dated in the years 1882, 1883, 1892 and 1893 and purporting to have been executed by Mary L. Bee, was permitted to testify, from his comparison of the signature in question with those found on the deeds, that said signature was, in his opinion, genuine. He did not claim to know the signature of Mrs. Bee, nor did it appear that he had had any extensive experience in any business requiring particular attention to signatures. Ten witnesses holding positions in banks, most, if not all, of whom were cashiers, though admitting themselves not to be experts, were permitted to give their opinions, based upon comparison, that the signature was genuine. Their business involved and required close attention to signatures, but they did not deem themselves to be experts. Our statute permitting comparison of writings, sec. 21a, ch. 130, Code, does not in terms require witnesses testifying from comparison to be experts. It provides that genuine writings may be used with or without the testimony of witnesses, for the purpose of comparison. In some jurisdictions, it is held under similar statutes, that only experts can testify from comparison. Non-experts are

excluded because the members of the jury or the judge is as capable of making the test in that way as they are. *Griffin* v. *State,* 90 Ala. 596; *Spottiswood* v. *Weir,* 80 Cal. 448; *Wimbish* v. *State,* 89 Ga., 294; *Woodman* v. *Dana,* 52 Me. 9; *Bank* v. *Lierman,* 5 Neb. 247; *McKay* v. *Lasher,* 42 Hun. (N. Y.) 270; 25 Am. & Eng. Ency. L. 276; Wigmore Ev. sec. 1997; Greenleaf Ev., secs. 576, 578; Lawson Ex. & Op. Ev., p. 445. But such experts need not follow the profession of determining the genuineness of handwritings, nor possess anything more than peculiar or exceptional skill and knowledge of the subject of handwriting. It suffices that they are better qualified to express opinions on that subject than men usually are. Lawson, Ex. & Op. Ev., p. 453; *State* v. *Webb,* 56 Pac. 159; *Com.* v. *Nefus,* 135 Mass. 533; *Fairbank* v. *Hughson,* 58 Cal. 314; *State* v. *Davis,* 131 Mo. 380; *Sweetzer* v. *Lowell,* 33 Me. 446; *Tower* v. *Whip,* 53 W. Va., 158; *Clay* v. *Alderson,* 10 W. Va., 53. The bank officials testifying as witnesses come within this definition. It is a part of their daily business to pay out money on their belief in the genuineness of signatures, wherefore they devote more attention to handwriting than laborers, farmers, merchants or men engaged in the ordinary professions and obtain more knowledge and skill respecting signatures. They were competent witnesses, but the clerk of the County Court, not having shown any evidence of more than ordinary knowledge of signatures, was not competent.

The objection that the deeds used as standards of comparison are not sufficiently authenticated is not well taken. They are solemn instruments carefully prepared and executed and taken from the files of a public office in which they were lodged as mumiments of title, some of them more than thirty years before this controversy arose and when Mrs. Bee still possessed the health and strength incident to middle age. Similar standards were admitted for comparison in *Luco* v. *United States,* 23 How. (U. S.) 515, 541. A deed more than thirty years old and recorded is presumed to be genuine. *Greer* v. *Lumber & Mining Co.,* 134 Mo. 85; *Webb* v. *Ritter,* 60 W. Va. 193, 233.

The evidence thus produced by the plaintiffs, tending to

prove the genuineness of the signature is as full, complete
and satisfactory as they could be expected to make it under
the circumstances; and is equally as reliable as that adduced
by the defendants. The trial court's finding on this issue
must, therefore, be permitted to stand.

The record discloses no direct or positive evidence of actual
investment of the money received by Mrs. Bee from her first
husband's estate, in the Mercer County land. And the alleg-
ed declaration of trust says, by implication, that she did not
pay that money for the land at or before the conveyance of
one-half thereof to her. The two land transactions were
completed in March, 1875, and the paper declaring her in-
tention to invest trust money in it and make it a trust sub-
ject was not executed until May 5, 1875, almost two months
later. That declaration was prospective in its terms. Her
language was, "I am going to invest in a tract of land
lately bought" etc. This implies that she had not then in-
vested it, and says the land had been bought. The paper
adds, agreeably to the fact, that it had been conveyed to
herself and her husband. The title had already vested in her
without any qualification or limitation of any kind, and,
according to competent evidence, the cash payment of $730.00
had been made by the husband alone, in live stock, and the
deferred payments amounting to $470.00 had not been paid
as late as 1878 or 1879. It may be that the two land trans-
actions were intended to be one and to effect a substitution
of the Mercer County land for the other; but this is indi-
cated only by some of the circumstances, the ownership
of the Loudoun County land, Mrs. Bee's right and duty
and the relation of the two transactions in point of time.
On the other hand, the money received from the estate does
not seem actually to have been invested. It was not equal
in amount to half of the purchase money of the land, and,
two months after the land had been conveyed and the cash
payment made, Mrs. Bee declared it to be her intention to in-
vest the money in that land. If resort could be had to
surmise and conjecture, it might be said Dr. Bee made her
a present of a half interest in the tract, or that he made the
cash payment in live stock ,expecting her to reimburse him

to the extent of one-half of the payment. But such guesses are altogether uncertain and for that reason cannot be indulged in the disposition of a controversy of this kind.

Besides, there is an insuperable legal obstruction to the view that she could, by this declaration, impress a trust upon land the title to which had previously vested in her. She could neither convey nor incumber such land otherwise than by an instrument executed in the manner prescribed by law. She could only do so by means of a deed or contract signed, sealed and acknowledged by herself and her husband. *Graham* v. *Long,* 65 Pa. St. 383. This was not a separate estate which she might have bound in equity by her contract. It was her absolute property, which she could not charge either at law or in equity except by the joint action of herself and her husband and in the prescribed manner. *Pickens* v. *Knisely,* 36 W. Va., 794.

The argument submitted under the invocation of the maxim that equity regards what ought to be done or what parties have agreed to do, as having been done, accords a scope to that doctrine much wider than any text writer or reported decision indicates or warrants. If Mrs. Bee had actually bought the land in question with the trust fund she had in her hands, declaring her intention to take and hold it in trust, but had in fact taken an absolute conveyance to herself, equity would treat her as if she had done what she had declared it to be her intention to do. It would make her a trustee and compel her to perform the trust in disregard of the terms of the deed. But her failure to invest the money in the land left her only a trustee of the money. She could become a trustee of the land only by actual investment of the money in it. Mr. Pomeroy states the doctrine clearly in his work on Equity Jurisprudence, 4th Ed. sec. 587, as follows: "Whenever a trustee or other person standing in fiduciary relations, acting apparently within the scope of his powers, has trust funds in his hands, which he ought, in pursuance of his fiduciary duty, to employ in the purchase of property for the purposes of the trust, and he does purchase property with such funds, but takes the title thereto in his own name, without any declaration

of trust, then a trust with respect to such property at once arises in favor of the original *cestui que trust* or other beneficiary. Equity imputes an intention to fulfill the obligation resting upon the trustee; and, independently of any element of fraud, it regards the trustee as *intending to perform* the obligation,—as intending to act in accordance with his fiduciary duty, and not in violation thereof. It therefore treats the purchase as made for the benefit of the person beneficially interested. This doctrine is one of wide operation, of great efficiency, and is applied to every variety of persons occuping fiduciary relations.'' In section 422 of the same work emphasis is laid upon actual investment as an essential element of creation of the trust. It says: ''Whenever a trustee or other person in a fiduciary position, acting apparently within the scope of his 'powers,—that is, having authority, by virtue of his trust or other fiduciary relation, to do what he does do,—purchases land or personal property with trust funds, or funds in his hands impressed with the fiduciary character, and takes the title to such property in his own name, without any declaration of a trust, a trust with respect to such property at once results in favor of the original *cestui que trust* or other beneficiary; the purchaser becomes with respect to such property a trustee. Equity regards such a purchase as made in trust for the person beneficially interested, independently of any imputation of fraud or fradulent design, because it assumes that the purchaser *intended* to act, and was acting, in pursuance of his fiduciary duty, and not in violation thereof. This doctrine is one of wide operation, and is used by courts of equity with great efficiency in maintaining and protecting the beneficial rights of property. It has been applied to trustees proper, to executors, and adminstrators, directors and managers of corporations, guardians of infant wards, guardians or committees of lunatics, agents using moneys of their principals, partners using partnership funds, husbands purchasing property with funds belonging to the separate estates of their wives, and to all persons who stand in fiduciary relations toward others. In order that this rule may apply, however, it must be made to appear with

reasonable certainty that trust or other fiduciary funds were actually used in making the purchase. A court of equity, in order to raise a resulting trust, will not assume, *from the mere fact* that the purchaser had or might have had trust moneys in his hands, that he used them in paying for the property purchased, in| the absence of evidence clearly showing such use by him.''

The effort to make a distinction here on the ground of the character of the declaration fails, because it was one of unexecuted intention only. If the instrument had actually created a trust the rights of the parties would have been governed strictly by the terms of the declaration. It would have defined the trust. But it admits no more than a trust in the money received. It shows on its face the title to the land had vested in Mrs. Bee while she still held the money. No trust in the land had been created and it was legally impossible for her to impress a trust upon it, without prescribed cooperation of her husband. The argument erroneously assumes the existence of an express trust in the land.

Our concurrence in the view of the trial court that actual investment of the money in the land is essential to the establishment of the trust claimed and that there is a total lack of proof of such investment, renders it unnecessary to enter upon an inquiry as to the admissibility of evidence of declarations of Mrs. Bee, admitted as matter of explanation of her possession and as tending to prove she had spent all of the money she received from her husband's estate, in the education of her son and payment of his expenses. The defendants prevail without the aid of that testimony. It is manifestly not admissible merely to prove payment of the money to the heirs.

Under the prayer of the bill for general relief, there might have been a decree for the money Mrs. Bee received as shown by her receipt and declaration of trust, but without interest for any time prior to her death. But the plaintiffs did not ask for such a decree and their right to the fund was in no way litigated. If demanded, it might be paid, or defenses of some kind might be set up against such demand.

For this reason there can be no decree here for the money, though *prima facie* right to it is disclosed by the record. To decree it here might work surprise and injury. Under such circumstances, the practice is to remand the cause for the award of such relief, upon a proper application and successful resistance of any defense that may be set up. *Furbee* v. *Furbee,* 49 W. Va. 191; 3 Ency. Pl. & Pr. 349.

Failure of the trial court to award such relief or afford the plaintiffs an opportunity to claim it constitutes an error for which the decree, in so far only as it dismisses the bill, must be reversed. Costs will be awarded to the appellants as the parties substantially prevailing.

*Affirmed in part. Reversed in part. Remanded.*

WILLIAMS, JUDGE, (dissenting in part):

I concur in all of the foregoing opinion except so much of it as remands the cause for entry of a decree by the lower court. The case is one which, in my opinion, calls for entry by this court of such decree as the lower court should have entered. Having reached the conclusion that plaintiffs had failed to establish a trust in the land in the hands of Mrs. Bee for their use, and seeing that they had proven a clear case entitling them to a decree against her separate estate for the money, the court should have given them such a decree, with interest thereon from the time of her death, and made it a lien upon her lands in the hands of her devisees. Her interest in the Princeton land, having been conveyed to her since the creation by statute of separate estates of married women, was her separate estate and is liable, in equity, for her just obligations. Such decree is consistent with the special relief prayed for and is such relief as ought to be accorded under the prayer for general relief, and I would enter such decree here.