# CHARLESTON.

ALLIE POOLE *v.* J. E. BELLER, *Executor, Etc.*

(No. 5913)

Submitted November 22, 1927.   Decided November 29, 1927.

1. TRIAL—*Where Writing Has Been Submitted to Jury to Compare With Disputed Writing, Whether Disputed Writing is Genuine Becomes Jury Question; Where Writing is Submitted to Jury to Compare With Disputed Writing, in Absence of Other Evidence of Genuineness, Giving Peremptory Instruction is Error (Code, c. 130, §§ 21, 21a).*

   Where any writing proved to the satisfaction of the trial judge to be genuine has been submitted to the jury for the purpose of making comparison with a disputed writing as evidence of the genuineness or otherwise of such disputed writing, the question of the genuineness of the disputed writ-

ing becomes one for the jury, and if there be no other evidence, it is error to take the case from the jury by peremptory instruction. (p. 549.)

(Evidence, 22 C. J. § 879 [Anno]; Trial, 38 Cyc. p. 1513 [Anno]).

2.  WITNESSES—*Stepdaughter, Party to Litigation, Accustomed to Deceased Stepmother's Handwriting, Held Competent Witness as to Genuineness of Stepmother's Signature (Code, c. 130, § 23).*

A step-daughter reared from infancy by the step-mother until she was seventeen years of age, and since that age has carried on with her a voluminous mutual correspondence extending over many years, and who says that she is familiar with her step-mother's' handwriting is, from these facts and circumstances competent to testify as to the genuineness of the step-mother's signature to a disputed writing although the step-mother is deceased and the witness is a party to the litigation. (p. 551.)

(Evidence, 22 C. J. § 880.)

(NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of Syllabi.)

Error to Circuit Court, Mason County.

Action by Allie Poole against J. E. Beller, executor of the estate of S. M. Blake, deceased, on a note. Judgment for defendant, and plaintiff brings error.

*Judgment reversed; verdict set aside; new trial awarded.*

*S. G. Fisher* and *Robert L. Hogg,* for plaintiff in error.
*F. G. Musgrave* and *B. H. Blagg,* for defendant in error.

LIVELY, JUDGE:

Plaintiff below (and plaintiff in error here) sued defendant, J. E. Beller, as executor of the estate of S. M. Blake, in assumpsit on a note of $375.00, dated November 4, 1919, at one day after date made payable to her and purported to have been signed by defendant's decedent, S. M. Blake, as a renewal of note dated November 8, 1910. Defendant interposed the plea of *non est factum.* On the trial plaintiff testified that she was a stepchild of Mrs. S. M. Blake and had lived with her at Point Pleasant, W. Va., from her early childhood until she was about seventeen years of age, when

her father died, and she left to take care of her aunt in Huntington, W. Va., frequently visiting her step-mother at Point Pleasant, and corresponding with her. She produced in evidence two letters and two postal cards signed by S. M. Blake, one letter dated November 18, 1919, another dated November 8, 1910. The two postal cards were received by her about December 2, 1921. These letters and postals were received by mail, one of which letters dated November 8, 1910, contained a note. These letters and postals were submitted to the inspection of the court under sec. 21-A, chap. 130, Code, and offered as evidence for comparison with the note sued on. Over objection of defendant the letters and postals were admitted as evidence for comparison with the signature of S. M. Blake on the note in suit, which note was also introduced in evidence. She also testified that she was acquainted with the handwriting of Mrs. S. M. Blake, saying when asked if she was, "I certainly ought to be, when I corresponded with her all my life." She was then handed the note and asked to state whose signature was affixed thereto; the court sustained an objection to the question, to which plaintiff excepted, and vouched the record that if permitted to answer, she would say that the signature is that of S. M. Blake. This being all the testimony, defendant moved for a peremptory instruction in his favor, which instruction was given. A verdict was accordingly returned, on which a judgment of *nil capiat* was entered. This writ of error followed.

Under plaintiff's evidence two questions arise: (1) Were the letters and postal cards admissible for comparison?; and (2) Was her evidence that she was acquainted with the handwriting of Mrs. Blake, and her proffered evidence that the signature to the note was that of Mrs. S. M. Blake, admissible?

The letters and postals are not printed in the record, and we have no intimation of their contents. Under sec. 21-A, chap. 130, Code, any writing proved to the satisfaction of the judge to be genuine, may be used with or without the testimony of witnesses for the purpose of making a comparison with a disputed writing as evidence of the genuineness or otherwise of such disputed writing. Here the signature to

the note sued on is challenged as genuine by the plea that it was not the signature of S. M. Blake. As evidence of the genuineness of the signature to the note, letters and postals received through the mail are submitted purporting to come from the same person who signed the note. They were admitted as evidence, but the court by its direction to the jury, found that the evidence was not sufficient to make a *prima facie* case, coupled with the statement of the plaintiff that she was familiar with the signature of S. M. Blake.

Sec. 21, chap. 130, Code, requiring the writings offered for comparison to be proved to be genuine to the satisfaction of the court, is a legislative adoption of the general rule that it is the province of the court to say what is evidence, and then the province of the jury to determine its efficacy. It appears that the learned trial judge considered the letters and postal cards as genuine, for he overruled an objection to their introduction as evidence. Generally when a writing is offered as a standard of comparison, the court should find first as a fact that it is genuine, and the court's decision as to the credibility of this preliminary evidence is conclusive, unless it is shown to be without foundation, or based upon some erroneous application of legal principles. 10 R. C. L. p. 997, sec. 183, citing many cases. Whether the court finally concluded to exclude the evidence by directing a verdict for defendant is difficult to determine from the record. We think the court was justified in admitting these as genuine standards for purposes of comparison, for they were received by mail at variant periods prior to the writer's death, from step-mother to her step-daughter, preserved by the latter, and fully identified, and the contents may have been such as to impel the conclusion that only the step-mother could have written them. It was said in *Maynard* v. *Bailey,* 85 W. Va. 679-683: "Like any other material fact, the authenticity or genuineness of a letter may be established by circumstantial evidence. If its tenor, subject matter and the parties between whom it purports to have passed make it fairly fit into an admitted or proved course of correspondence and constitute an evident connecting link or part thereof, these circumstances justify its admission," citing authorities. See annotations to *May-*

*nard* v. *Bailey, supra,* in 9 A. L. R. 984. Defendant does not assign as cross-error their introduction to the jury. Having submitted them as standards to the jury, they could be considered by it with or without testimony of witnesses for making a comparison with the disputed signature; and then the issue under the plea became a question for jury determination. The weight of that evidence was for the jury, and not to be determined by the court. On the state of the record, it was error for the court to take the question of the genuineness of the signature on the note sued on from the jury. It may be conceded that the evidence afforded by the standards admitted was slight and inconclusive, but it made a jury question.

We pass, now, to that part of plaintiff's evidence in which she says she was familiar with Mrs. Blake's signature, and her proffered evidence that the signature was that of defendant's decedent. It is argued by defendant that plaintiff's evidence that she was familiar with Mrs. Blake's signature and her proffered evidence that the signature to the note sued on was that of Mrs. S. M. Blake was inadmissible because it violates sec. 23, chap. 130, Code, sealing the lips of an interested witness as to any personal transaction with a deceased person. If a witness knows the signature of the deceased person, and has obtained that knowledge otherwise than by personal transactions with the deceased, his evidence as to the genuineness of the deceased's signature is not barred by the statute. Whether the evidence of the witness is admissible depends upon the means by which the knowledge of the handwriting was obtained. As was pointed out in *Johnson* v. *Bee,* 84 W. Va. 532, the decided weight of authority affirms the right of an interested person or party to testify to the handwriting of a signature purporting to be that of a deceased person, if he is otherwise qualified, even though he would be an incompetent witness to testify to the act of signing. He cannot testify that he saw the deceased sign, for that would be a personal transaction evidence of which is inhibited by the statute; but if he knows the signature on the paper to be that of the deceased from other and independent sources, his evidence as to its genuineness based on

those sources is admissible for what it is worth. The test of admissibility under the statute is whether the fact in question is a personal transaction or communication or involves one or the other. *Davidson* v. *Browning*, 73 W. Va. 276, cited in *Johnson* v. *Bee, supra.* That testimony by the plaintiff as to the genuineness of the signature of a decedent is admissible under statutory rule against permitting a party to testify as to transactions with a decedent, as being in conformity to the majority rule, see note to *Ware* v. *Burch,* 12 Ann. Cas. 671. How did Mrs. Poole (plaintiff) know the signature and handwriting of Mrs. Blake, her step-mother? She says she lived with her for about fifteen years and after that time frequent letters passed between them, an extended correspondence running through the period of their separation. She does not say she ever saw Mrs. Blake write. One of the letters put in evidence, that dated November 8, 1910, contained a note, and the note sued on purports to be a renewal of a note dated November 8, 1910. Whether the letters and postals in evidence were replies to letters written by plaintiff does not appear. As above stated they do not appear in the record and their contents are beyond surmise. The case was poorly developed. Jones on Evidence (2nd ed.), Vol. 3, p. 2358, sec. 1282, says: "A witness is deemed *prima facie* competent to testify to the handwriting of another person when he has received letters or documents purporting to be written by that person in answer to those written by himself, or under his authority, and addressed to that person. In such case, there is a presumption that the letter or document is genuine. The witness need not be the sendee of the letters or even the custodian of the documents. As noted in the preceding section, any witness may be called who has, by sufficient means, acquired a knowledge of the general character of the handwriting of the party whose signature is in question." To the same effect is 11 R. C. L. p. 620, sec. 41, stating that, "it has been often held that any one may give his opinion who has seen the supposed author write, or who has received letters or other writings from the supposed writer, or has had occasion to see them in the ordinary cause of business, under such circumstances as create a presumption

that they were really written by him, or has seen writings acknowledged by him to be in his own handwriting.'' This rule regulating the admissibility of such evidence was followed in *Johnson* v. *Bee,* 84 W. Va. 432, where grandchildren who had obtained knowledge of their grandmother's handwriting from inspection and repeated reading of letters from her to their mother, preserved in the family, were held to be competent to testify to their belief in the genuineness of their grandmother's signature to a paper, which, if sustained as genuine, would be to their material benefit. Under this rule plaintiff's evidence that she knew the handwriting of Mrs. Blake from a long residence with her and from long correspondence between them would qualify her to testify as to the genuineness of the latter's signature on the note, and make out a *prima facie* case in her favor on the issue under the plea. It was error to give the peremptory instruction for the reasons above stated, and the verdict and judgment will be set aside and the cause remanded for a new trial.

> *Judgment reversed; verdict set aside;*
> *new trial awarded.*